**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Antoine D. WASHINGTON, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Glen EARLY, Jr., a/k/a William Kevin Marcus, Defendant–Appellant.**

**Nos. 92–3237, 92–3246.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 6, 1993.

Decided Jan. 14, 1994.

---

R. Kenneth Mundy (appointed by the Court), argued the cause and filed the briefs for appellant in No. 92–3237.

Douglas J. Wood, argued the cause and filed the briefs for appellant in No. 92–3246.

Norman C. Bay, Asst. U.S. Atty., argued the cause for appellee. With him on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, John R. Fisher, Roy W. McLeese, III, and Gilberto DeJesus, Asst. U.S. Attys.

Before WALD, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellants Antoine D. Washington and Glen Early were each convicted after a jury trial of one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988) and 18 U.S.C. § 2 (1988). Together, Washington and Early raise eight challenges to their convictions. Because we disagree with each of the defendants' arguments, we affirm. We reject the assertion that the trial judge erred in denying Early's and Washington's motions to suppress evidence, Washington's motion to sever the trials, and Early's motion to suppress photo identification testimony. We also find that the district court properly admitted "other crimes" evidence about Early and we disagree with the defendants' claims that there was insufficient evidence supporting their convictions of aiding or abetting the possession of cocaine. Nor are we persuaded that reversal of Early's conviction is warranted by the district court's decision to deny Early's motion to introduce only the impeaching portions of prior statements by government witnesses. Although the jury instructions contained an unconstitutional reasonable doubt instruction, the district court did not commit plain error, and this is not a case in which the supervening-decision doctrine counsels reversal. Finally, we hold that the district court did not err in enhancing Early's sentence for reckless endangerment of the public.

## I. Background

On February 18, 1992, the District of Columbia Metropolitan Police Department broadcast a lookout for a man with a gun in the vicinity of a McDonald's restaurant at Peabody Street and Georgia Avenue, N.W. In connection with that broadcast, a further lookout was announced for three black men in a burgundy four-door car. Officer Hemphill, who was in the lookout area, spotted three black men in a red two-door Mazda. Early was the driver, Washington was in the front passenger seat, and Daniel Wright was in the back seat.[1] After Hemphill, who was driving in a marked police car, activated his siren and ordered the Mazda to stop, the driver obeyed. As Hemphill approached the car on foot, Wright told Early to "pull off" because he had drugs in his possession, and the Mazda sped away. Hemphill then returned to his car to broadcast a lookout, which was heard by Officers Jewell and Iuzzolino, who were in a patrol car coming from the opposite direction of the Mazda. When Jewell and Iuzzolino saw the Mazda, they chased it into an alley. The Mazda slowed, and Washington's seat moved forward as Wright jumped out of the passenger side door, carrying a clear ziplock bag containing a white or light-colored substance. Wright then crossed in back of the car to the driver's side. After running quickly in tandem with the Mazda for about one block, Wright threw the plastic bag into the car through the driver's side window. He then split away from the Mazda and Iuzzolino pursued him on foot.

Soon thereafter, Early lost control of the Mazda and it flipped onto the driver's side. Early and Washington climbed through the passenger's side window and fled from the car. While running, Early held his left arm as if it was injured. Officer Jewell radioed for assistance and then went to the spot where Washington had scaled a fence. There she found a Bell Atlantic pager which had been purchased by Early. Meanwhile, in response to Jewell's broadcast, Officer Lesher spotted Washington emerging from an alley. Lesher chased Washington and apprehended him within a block of the Mazda. Washington had $586 in cash and a pager on his person. Iuzzolino and Jewell returned to the Mazda and saw, lying inside the over-

---

1. Daniel Wright is not a defendant in this case.

turned car on top of the driver's side door, a plastic ziplock bag containing white rock chunks in plain view. The bag was seized without a warrant and was found to contain narcotics.

Later, Officer Brigindi investigated the Mazda's license plate number and discovered that the car was registered to Glen Early. About a week after the car chase, he obtained a single photo of Early and showed it to Iuzzolino, who recognized Early as someone he had seen before on his beat and as the driver of the Mazda. Brigindi obtained an arrest warrant for Early and took him into custody. At the time of the arrest, Early was wearing a cast on his left arm. On Early's person was a beeper, some money, and personal papers, including a Kaiser Permanente health card in the name of Marcus Williams, who is Early's cousin. The record shows that the day after the car chase, someone used this health card to receive treatment for an injury to his left arm, and that person was not Marcus Williams.

On July 14, 1992, Judge Harris issued a memorandum opinion in which he denied: (1) both Washington's and Early's motions to sever; (2) Early's motion to suppress the plastic bag containing drugs; and (3) Early's motion to suppress identification testimony based on the showing of a single photograph. Memorandum Opinion, July 14, 1992 ("Mem. Op."). The district court reserved judgment on Washington's motion to suppress the tangible evidence recovered from his person at the time of his arrest. At the suppression hearing on July 15, 1992, Judge Harris orally denied Washington's motion to suppress the evidence recovered from his person. On the second day of trial, Early renewed his motion to suppress the drugs found in the car. The district court denied the renewed motion.

On July 21, 1992, Washington and Early were each convicted by the jury on the possession count. Washington was sentenced to 151 months in prison and Early was sentenced to 174 months in prison. In total, Early and Washington raise eight challenges to their convictions, each of which we will address in turn.

## II. Analysis

### A. Unreasonable Search and Seizure

Early challenges the district court's denial of his motion to suppress the evidence retrieved from the Mazda. Early contends that when Officer Hemphill activated his sirens and ordered the driver of the Mazda to stop, he effectuated a seizure within the meaning of the Fourth Amendment. It is well-established that " 'a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *United States v. Jordan,* 958 F.2d 1085, 1086 (D.C.Cir.1992) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). In addition, the person must have actually submitted to the assertion of authority. *California v. Hodari D.,* 499 U.S. 621, 626–27, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991). Although a reasonable person would not have believed that she was free to continue driving once Officer Hemphill activated his sirens and ordered the Mazda's driver to stop, Early did not in fact submit to the officer's order. Early initially stopped, but he drove off quickly before Officer Hemphill even reached the car. Because Early did not submit to Hemphill's order, he was not seized within the meaning of the Fourth Amendment.

The district court found that the warrantless seizure of the drugs from the Mazda did not violate the Fourth Amendment because the vehicle was abandoned once the defendants left it overturned in the alley and fled the scene, and the plastic bag which appeared to contain drugs was in plain view inside the overturned Mazda lying on top of the driver's side door. *See generally United States v. Thomas,* 864 F.2d 843, 845–46 (D.C.Cir.1989). We review a finding of abandonment for clear error, *id.* at 846, and conclude here that it was not clearly erroneous for the district court to determine that the defendants had abandoned the Mazda. Therefore, the prerequisites for a valid plain view search were met—the officers were lawfully in a position to observe the plastic ziplock bag, the officers had a lawful right of

access to the bag, and the incriminating nature of the contents of the bag was immediately apparent. *See Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2307–08, 110 L.Ed.2d 112 (1990); *see also United States v. Patrick,* 959 F.2d 991, 997 (D.C.Cir. 1992). In other words, the police officers had probable cause to believe that the bag contained evidence of a crime. *See Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987).

■ Washington also contests the district court's denial of his motion to suppress the money and pager seized from his person by Officer Lesher. Washington claims that the physical evidence seized from his person is the fruit of a poisonous tree—the initial stop of the Mazda. As discussed previously, however, there is no poisonous tree; Hemphill's stop of the Mazda was not a seizure in violation of the Fourth Amendment. More important, the totality of the circumstances reveals that by the time Washington was searched, there was probable cause for his arrest. *See Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *United States v. Taylor,* 997 F.2d 1551, 1553 (D.C.Cir.1993). As the district court found, although Washington's flight from the overturned Mazda in and of itself was insufficient to establish probable cause, *see United States v. Salamanca,* 990 F.2d 629, 639 (D.C.Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993), the combination of the speedy car chase, Wright throwing a plastic bag which appeared to contain a white or light colored substance through the car window, and Washington's flight constituted an "escalating street scene" giving rise to probable cause. Washington was properly searched incident to his arrest. *See Taylor,* 997 F.2d at 1553; *accord New York v. Belton,* 453 U.S. 454, 461, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (search incident to custodial arrest of suspect based on probable cause is reasonable intrusion under Fourth Amendment); *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969) (reasonable for arresting officer to search for and seize any evidence on arrestee's person to prevent its concealment or destruction).

## B. *Motion for Severance*

■ Before trial, Washington moved for severance, claiming that Early would present exculpatory testimony to the effect that Washington lacked knowledge of the drugs seized from the car. The district court denied the motion. On appeal, Washington challenges the district court's refusal to sever his trial from that of Early. Under Rule 14 of the Federal Rules of Criminal Procedure, a district court may grant a severance "[i]f it appears that a defendant ... is prejudiced by a joinder of ... defendants." FED. R.CRIM.P. 14 (1993). Due to the permissive language of Rule 14, we accord great deference to a district court's decision to deny severance. *See United States v. Harrison,* 931 F.2d 65, 67 (D.C.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 408, 116 L.Ed.2d 356 (1991).

In *United States v. Ford,* 870 F.2d 729 (D.C.Cir.1989), we set forth the four preconditions necessary for a movant to establish a *prima facie* case for severance based on an asserted need for a co-defendant's testimony. She must make a threshold showing of: "(1) a *bona fide* need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed." *Id.* at 731. A failure to demonstrate any one of these elements is dispositive. *Harrison,* 931 F.2d at 67. Here, the district court decided that Washington failed the third and fourth prongs of *Ford.* The district court found that the testimony would not be "affirmatively exculpatory in the same sense as, for example, testimony regarding an alibi," and that Washington failed to establish a "reasonable probability" that Early's testimony would follow severance. Mem. Op. at 3–4 & n. 2.

When fulfilling the *Ford* conditions, the movant must demonstrate the substance of her co-defendant's testimony with specificity sufficient to show that the testimony will be "substantially exculpatory." *See Harrison,* 931 F.2d at 67–68. We agree with the district court that Washington failed to meet this burden. Washington points to only one

statement by Early's counsel to substantiate his claim regarding the exculpatory nature of Early's testimony: "Mr. Early indeed would be willing to testify on behalf of Mr. Washington in separate trials; and that the testimony that Mr. Early would offer on Mr. Washington's behalf would be exculpatory." Moreover, because Early and Washington stated only that they would be willing to testify in a joint trial before two separate juries, the district court found that "[e]ach defendant basically has conditioned his willingness to testify on an extraordinary trial arrangement that the Court does not consider viable." Mem. Op. at 4 & n. 3. Given the absence of a "reasonable probability" that Early's testimony would indeed follow severance, we uphold the district court's decision to deny Washington's motion to sever. *See United States v. Washington,* 969 F.2d 1073, 1080 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993).

### C. *Suppression of Photo Identification Testimony*

■ Early next contends that the district court erred in refusing to suppress all testimony relating to his out-of-court and in-court identifications. Early asserts that the use of a single photograph to identify him as the driver of the Mazda was unnecessarily suggestive and conducive to an irreparable mistaken identification and therefore violated his due process rights. Based on the tag number of the Mazda, Officer Brigindi obtained a photograph of the person to whom the car was registered—Glen Early. Approximately seven · days after the car chase, Brigindi showed that single photograph to Officer Iuzzolino, who identified the person in the photograph as the driver of the Mazda. Brigindi testified that Iuzzolino knew the photo he was viewing related to the February 18, 1992, incident and that Iuzzolino recognized Early from the neighborhood. Subsequent to Iuzzolino's identification, Early was arrested. At the police station, Brigindi showed the same photograph to Officer Jewell and she too identified Early as the driver of the Mazda.

Our decision is controlled by the two-step inquiry compelled by the Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). First, we determine whether the showing of a single photograph to Officers Iuzzolino and Jewell was impermissibly suggestive. *Biggers,* 409 U.S. at 197, 93 S.Ct. at 381. Assuming that it was, we then examine whether, under the totality of the circumstances, the identification was sufficiently reliable to preclude a substantial likelihood of misidentification. *See Manson,* 432 U.S. at 113–16, 97 S.Ct. at 2252–54 (finding that indicators of a police officer's ability to make an accurate identification were not outweighed by the corrupting effect of a single-photograph identification). Factors to consider when asking whether the identification remained reliable despite suggestive pretrial procedures include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Id.* at 114, 97 S.Ct. at 2253. Several of these factors support the district court's determination that the identification procedure in this case did not create a significant risk of misidentification. *See* Mem. Op. at 5. For example, although Iuzzolino only saw the driver of the Mazda as his police car and the Mazda passed each other from opposite directions, he recognized Early from prior contacts. In · addition, the chase occurred in broad daylight, Officer Jewell had several opportunities to see Early during the chase and as he climbed out of the car, and both officers were trained to focus on the suspects fleeing from them. *See id.* Furthermore, neither officer hesitated in positively identifying Early as the driver. Under a totality of the circumstances analysis, therefore, the reliability of the single-photograph identification outweighed its suggestiveness.

### D. *Admission of Rule 404(b) Evidence Against Early*

■ Washington contests the district court's decision to admit testimony that Early used a false identity to obtain ·medical

treatment the day after the car chase, arguing that the testimony constituted "other crimes" evidence prohibited by Federal Rule of Evidence 404(b).[2] Rule 404(b) prohibits the admission of evidence of a person's other crimes if such evidence is used to demonstrate that person's character. *See* FED. R.EVID. 404(b) (1993). Nevertheless, Rule 404(b) bars only the introduction of evidence offered *solely* to show a defendant's character, and the testimony pertaining to the use of the Kaiser Permanente health card was offered for a different and proper purpose of proving Early's identity as the driver of the car. *See* FED.R.EVID. 404(b) (evidence of other crimes may be admissible to prove identity); *see also United States v. Washington,* 969 F.2d 1073, 1080–81 (D.C.Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1287, 122 L.Ed.2d 679 (1993); *United States v. Miller,* 895 F.2d 1431, 1436 (D.C.Cir.), *cert. denied,* 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). Moreover, "Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen,* 960 F.2d 1055, 1058 (D.C.Cir.) (per curiam) (citations omitted), *cert. denied,* —— U.S. ——, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992). The testimony revealing that Early used his cousin's Kaiser Permanente health insurance card to obtain medical treatment was intrinsic to the charged offense because it helped establish his identity as the driver of the Mazda—Officer Jewell had observed that after the car overturned, its driver was holding his left arm as if it were injured, and Early was treated for an injured left arm.

■ Washington also argues that the district court erred by failing to conduct an on-the-record balancing of the probative value of the testimony against its prejudicial effect. *See* FED.R.CRIM.P. 403 (1993) ("evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice"). While this balancing should ordinarily occur on the record, we will not automatically reverse or remand for failure to do so if defense counsel failed to request such a balancing, or if "the considerations germane to balancing probative value versus prejudicial effect are readily apparent from the record." *United States v. Manner,* 887 F.2d 317, 322 (D.C.Cir.1989) (quotations and citations omitted), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). Neither Early nor Washington requested a probative/prejudicial balancing, and we believe the record readily demonstrates that the testimony was more probative than prejudicial. The coincidence that the driver of the implicated car was seen immediately after the accident cradling the same limb for which Early sought medical attention a day later is highly probative of Early's identity as the driver of the abandoned car.

### E. Sufficiency of the Evidence

Both Early and Washington allege that the government failed to introduce sufficient evidence to convict them of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2(a). Under 18 U.S.C. § 2(a), a person who "aids, abets, counsels, commands, induces or procures" a crime is punishable as a principal for that offense. As we have repeatedly indicated, a defendant faces a high threshold when seeking to overturn a guilty verdict on the grounds of insufficiency of the evidence. Our review is confined to the question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

---

**2.** We note that it is not clear that Washington has standing to raise the Rule 404(b) argument on appeal. *See United States v. David,* 940 F.2d 722, 736 (1st Cir.1991) (objections based on Rule 404(b) may be raised only by the person whose "other crimes, wrongs, or acts" are at issue), *cert. denied,* —— U.S. ——, 112 S.Ct. 2301, 119 L.Ed.2d 224 (1992). Because we easily conclude that the evidence was properly admitted, however, we do not need to definitively resolve this standing question which has not yet been decided in our circuit. Nor need we decide whether, because Early but not Washington objected to the admission of the evidence at trial, Washington has preserved his right to raise the issue on appeal. *See United States v. Hoffman,* 964 F.2d 21, 24 n. 4 (D.C.Cir.1992) (per curiam); *cf. United States v. Pardo,* 636 F.2d 535, 541 (D.C.Cir. 1980) ("in certain situations, it may be redundant and inefficient to require each defendant in a joint trial to stand up individually and make every objection to preserve each error for appeal").

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Early and Washington both contend that there was insufficient evidence to establish that they actually or even constructively possessed the cocaine. Instead of demonstrating actual or constructive possession, however, the government only needed to prove that the defendants aided or abetted Wright's possession of the drugs. *See United States v. Poston*, 902 F.2d 90, 94 (D.C.Cir. 1990) (squarely rejecting argument that defendant must himself obtain constructive possession of an unlawful substance in order to aid or abet another's possession); *cf. United States v. Lam Kwong-Wah*, 924 F.2d 298, 302 (D.C.Cir.1991) (federal statute creating liability for aiding or abetting is fully embodied in every federal indictment and thus defendant may be convicted as an aider or abettor absent any specific allegation in indictment to that effect). The government must establish the following four elements in order to convict a defendant as an aider or abettor:

> "(1) the specific intent to facilitate the commission of a crime by another; (2) guilty knowledge on the part of the accused; (3) that an offense was being committed by someone; and (4) that the accused assisted or participated in the commission of the offense."

*United States v. Harris*, 959 F.2d 246, 262 (D.C.Cir.) (quoting *United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir.1982)), *cert. denied sub nom. Palmer v. United States*, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992). To participate in the offense, a defendant need not have assisted the principal in *obtaining* the drugs, he need only have aided or abetted the *retention* of possession. *See Poston*, 902 F.2d at 94. We now assess in turn the sufficiency of the evidence to convict Early, and Washington, of aiding or abetting the possession of cocaine.

1. Early's Conviction

■ In this case, a reasonable juror could have found . that Early was attempting to assist Wright by evading the police after the initial stop of the Mazda. At that point, Early knew that Wright possessed drugs. Early interrupted a high speed chase to allow Wright to get out of the car. After jumping out of the car on the passenger's side, Wright crossed over to the driver's side and ran alongside for a little less than a block. A reasonable juror could have concluded that Wright and Early were trying to determine a course of action and that they decided the drugs would be safer in the car. In addition, when the police arrested Early several weeks after the car chase, he had a pager and $592 in cash on his person. From this evidence, a reasonable juror could have decided that Early aided or abetted the possession of cocaine by trying to prevent the police from seizing the contraband. *See United States v. Poston*, 902 F.2d 90, 94 (D.C.Cir.1990) (finding sufficient evidence of aiding and abetting where defendant dropped off person with the drugs and then remained in vicinity of the drug sale).

2. Washington's Conviction

■ The sufficiency of the evidence to convict Washington of aiding or abetting the possession of the drugs is less cut-and-dried. There is no evidence that Washington knew of the existence of the drugs until Officer Hemphill ordered the Mazda to stop. According to Washington's testimony, at that point, Wright told Early to "pull off" because he had drugs on him. Early "pulled off" before Washington had time to exit the car. Although his seat had to be moved forward to allow Wright to leave the car, Washington testified that he did not voluntarily help Wright. Nor can Washington be convicted of aiding or abetting Wright merely because he failed to jump out of the Mazda when it slowed to let Wright out. "[I]t is not a crime simply to travel—even knowingly—with someone who is carrying drugs; to be liable for the substantive offense, one must actively seek to aid or assist the person in possessing the drugs." *United States v. Teffera*, 985 F.2d 1082, 1087 (D.C.Cir.1993). Moreover, if indeed, as a juror might surmise, Wright ran next to the car to decide what to do with the drugs, it is significant that he ran alongside Early and threw the drugs through Early's,

and not Washington's, window. Finally, Washington's flight after the car crashed is not by itself dispositive of guilt. *See United States v. Salamanca*, 990 F.2d 629, 639 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993).

Nonetheless, in a single sentence of testimony at trial, Washington diminished substantially his chance of succeeding on an insufficiency of the evidence claim. On direct examination, when asked why he ran after the Mazda overturned, Washington explained: "I was scared ... because the police ... [would] try to lock me up ... because I pulled the package through the window." Pulling the bag of drugs through the window clearly qualifies as aiding or abetting. In addition, when the police caught Washington, they found on his person a beeper purchased by Early and $586, which included nine ten-dollar bills, thirteen twenty-dollar bills and four fifty-dollar bills. The narcotics expert testified that one would expect to find bills of such denominations on a drug dealer, and that drug dealers often provide beepers to their assistants. Therefore, taken as a whole, this evidence is sufficient for a reasonable juror to conclude that Washington aided or abetted the possession of the cocaine.

### F. *Rule of Completeness*

At trial, Early pointed out three inconsistencies between the trial testimony of Officer Iuzzolino and his prior statement made on the day of the car chase. Early also fleshed out a discrepancy between Officer Brigindi's testimony at a preliminary hearing on March 11, 1992, and information provided by Early on a police form on the evening of his arrest. At the close of his case, Early sought to introduce only the portions of the officers' prior statements that contained the impeaching information. The district court responded that it could not admit selected portions of the prior statements, and the government agreed, claiming that the prior statements should be admitted in their entirety, or not at all. Early again attempted to introduce only the impeaching portions of the prior statements. The district court refused, and Early responded "Okay." Relying on our opinion in *United States v. Rogers*, 918 F.2d 207, 212 (D.C.Cir.1990), the government argues that by acquiescing in a ruling he once claimed was erroneous, Early failed to preserve his objection for appeal. However, it is not clear that Early's counsel acquiesced in the trial court's decision to exclude the officers' prior statements. Whereas the defense counsel in *Rogers* clearly allowed his objection to be withdrawn following the trial court's ruling, the utterance of the word "okay" does not always constitute a withdrawal of an objection. Because, however, we conclude that under the circumstances the district court properly excluded the impeaching portions of the prior statements, we need not decide the waiver issue.

The district court based its decision to exclude the portions of the officers' prior statements which contained impeaching material on the rule of completeness. Under the rule of completeness, which is contained in Federal Rule of Evidence 106,[3] "where substantial parts of a prior statement are used in cross-examination of a witness, fairness dictates that the balance be received so that the jury will not be misled." *United States v. Rubin*, 609 F.2d 51, 63 (2d Cir. 1979), *aff'd on other grounds*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). The application of the rule of completeness is a matter for the trial judge's discretion, *accord United States v. Dorrell*, 758 F.2d 427, 434 (9th Cir.1985), and the court properly exercised that discretion here by conditioning admission of the impeaching portions of the officers' prior statements on the admission of these prior statements in their entirety. The record below indicates that because Early was not willing to introduce the prior statements in full, the district court refused to admit any of the evidence, and we cannot find that the court abused its discretion in making that determination. Moreover, any prejudice caused by the exclusion of the portions of the documents containing impeaching

---

3. Rule 106 states in full: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed.R.Evid. 106.

**1138**

information was insufficient to warrant reversal of Early's conviction because Officers Iuzzolino and Brigindi were both cross-examined closely about the inconsistencies, and the inconsistencies were minor.[4] *See United States v. Smith,* 521 F.2d 957, 970 (D.C.Cir. 1975).

## G. *"Strong Belief" Jury Instruction*

On appeal, both defendants challenge the constitutionality of the jury instruction. At trial, the district judge instructed the jurors that they could find guilt beyond a reasonable doubt if the evidence caused them to have a "strong belief" in the defendants' guilt. We have recently held that a jury instruction which equates "beyond a reasonable doubt" with "strong belief" is constitutionally deficient. *See United States v. Merlos,* 984 F.2d 1239, 1240 (D.C.Cir.1993) (*"Merlos I"*). Shortly after our decision in *Merlos I,* the Supreme Court held that a constitutionally deficient reasonable doubt instruction is never harmless error. *Sullivan v. Louisiana,* — U.S. —, —, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). Therefore, had either Washington or Early timely objected to the instruction, we would be obliged to reverse his conviction. *See United States v. Loriano,* 996 F.2d 424 (D.C.Cir. 1993) (per curiam) (reversing conviction in light of *Sullivan* where defendant timely objected to "strong belief" instruction). However, neither Washington nor Early objected to the "strong belief" jury instruction until this appeal, and thus we review the district court's constitutionally faulty reasonable doubt instruction for plain, rather than harmless, error. *See* FED.R.CRIM.P. 52(b).

■ The plain error standard requires us to determine: (1) whether there is unwaived legal error, (2) whether the error was "plain" or "obvious" under current law, and (3) whether the error was prejudicial. *United States v. Olano,* 113 S.Ct. 1770, 1777–78, 123

L.Ed.2d 508 (1993). The error must "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Id.* at —, 113 S.Ct. at 1779. Because the prejudice inquiry is normally the same under the plain error standard as under the harmless error standard, under *Sullivan,* a constitutionally deficient reasonable doubt instruction is presumptively prejudicial; "the court cannot assess the impact of the error on the outcome of the trial because there has been no jury finding of guilt beyond a reasonable doubt in the first instance." *United States v. Merlos,* 8 F.3d 48, 51 (D.C.Cir.1993) (on petition for rehearing) (*"Merlos II"*). Even though the error was prejudicial, it was not "plain" or "obvious" under current law at the time of trial because in mid-July, 1992 this circuit had not yet held that the phrase "strong belief" was constitutionally deficient. *Id.* at 51. Therefore, we find that the district court did not commit plain error by equating "strong belief" with "beyond a reasonable doubt."

■ Our analysis does not end there, however. In the interests of justice, "we are bound to consider any change, either in fact or in law, which has supervened since the [trial court's] judgment was entered." *Patterson v. Alabama,* 294 U.S. 600, 607, 55 S.Ct. 575, 578, 79 L.Ed. 1082 (1935); *see also Alexander v. United States,* 418 F.2d 1203, 1206 (D.C.Cir.1969); *cf. Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (appellate courts have discretion to resolve issues not raised below if justice so requires). The supervening-decision doctrine is a corollary to the general principle that an appellate court should apply the law in effect at the time of appeal. *See Brown–Forman Corp. v. Tennessee Alcoholic Beverage Comm'n,* 883 F.2d 504, 513 (6th Cir.1989); *accord United States v. Novey,* 922 F.2d 624, 629 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 2861, 115

---

4. Officer Iuzzolino was impeached for the following three inconsistencies: (1) the police report he prepared on the day of the car chase stated that the Mazda "slowed down" but at trial he stated that it "stopped"; (2) the report stated that Wright was carrying the plastic bag in his left hand but at trial he stated that Wright carried the bag in both hands; and (3) the report stated

that Wright threw the drugs in the car but at trial he claimed that Wright "handed-off" the drugs into the car. Officer Brigindi was impeached for stating at a preliminary hearing that Early never gave his proper name during the evening of his arrest when Early actually wrote his name down on one of the police forms. *Id.* at 180.

L.Ed.2d 1028 (1991). Under the supervening-decision doctrine, we may consider issues not raised at trial where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless. *See Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 277 (D.C.Cir.1993); *United States v. Byers*, 740 F.2d 1104, 1132–33 (D.C.Cir.1984) (en banc) (Robinson, J., concurring); *id.* at 1109, 1115–16 nn. 6 & 11 (Scalia, J., writing for plurality); accord *Smith v. Estelle*, 602 F.2d 694, 708 n. 19 (5th Cir.1979), *aff'd*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981); 3 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 26.5(c) at 252 (1984). The supervening-decision doctrine reflects the principle that it would be unfair, and even contrary to the efficient administration of justice, to expect a defendant to object at trial where existing law appears so clear as to foreclose any possibility of success. Unless the appellate court reaches out on its own to consider the effect of a supervening decision in such a situation, the defendant, through no fault of her own, would not receive the benefit of the change in law. *See Pendergrast v. United States*, 416 F.2d 776, 781 (D.C.Cir.), *cert. denied*, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969).

■ In this case, however, the supervening-decision doctrine does not apply to provide relief to the defendants. At the time of trial, the constitutionality of the "strong belief" jury instruction was not so well-established that any objection would have seemed futile. No court of appeals had upheld a jury instruction which equated "strong belief" with "beyond a reasonable doubt." In addition, the defendants had been put on notice that a plausible objection to a reasonable doubt instruction might have an especial advantage because of our previous insistence that "[a]n instruction central to the determination of guilt or innocence may be fatally tainted by even a minor variation which tends to create ambiguity." *United States v. Rhone*, 864 F.2d 832, 837 (D.C.Cir.1989) (quoting *United States v. Alston*, 551 F.2d 315, 321 (D.C.Cir.1976)). Indeed, one of the two defendants in *Merlos I* objected to an instruction identical to the one given in this case on the grounds that the instruction was "somewhat prejudicial." *See United States v. Loriano*, 996 F.2d 424 (D.C.Cir.1993) (per curiam). Moreover, the rationale relied on by this court to invalidate the "strong belief" jury instruction in *Merlos I* was equally accessible to the defendants in this case. *Merlos I* cited dictionary and common-sense definitions to distinguish "strong belief" from the phrase "abiding conviction" characterized as "exemplary" in *Moore v. United States*, 345 F.2d 97, 98 (D.C.Cir.1965). *See* 984 F.2d at 1241–42. In the totality of circumstances, Early's and Washington's failure to object to the "strong belief" instruction cannot be excused on grounds of apparent futility, and we do not find it appropriate to invoke the supervening-decision doctrine to invalidate their convictions.

## H. *Reckless Endangerment*

■ Early's final claim is that the district court erred in enhancing his offense level under section 3C1.2 of the Sentencing Guidelines. *See* U.S.S.G. § 3C1.2 (increase by 2 levels if defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer"). We review the district court's decision for clear error. *Cf. United States v. Thompson*, 962 F.2d 1069, 1072 (D.C.Cir.1992) (whether defendant obstructed justice under U.S.S.G. § 3C1.1 reviewed for clear error), *cert. denied*, — U.S. ——, 113 S.Ct. 1418, 122 L.Ed.2d 788 (1993). In his attempt to escape the police, Early drove in a fast and reckless manner through a series of neighborhood alleys and ended up flipping his car. It was not clearly erroneous for the district court to find that this behavior constituted reckless endangerment during flight.

## III. CONCLUSION

For the foregoing reasons, we affirm the convictions of Early and Washington. We reject the defendants' challenges to the district court's denial of the motions to suppress evidence, to sever their trials, to suppress photo identification testimony, to admit "other crimes" evidence about Early, and to the

trial court's refusal to introduce the impeaching portions of prior statements by government witnesses. In addition, we find that a reasonable juror could have found sufficient evidence to convict the defendants of aiding or abetting the possession count. While the jury instruction contained a constitutionally deficient reasonable doubt instruction, the instruction was not plainly erroneous. Nor was the apparent constitutionality of the instruction so well-established at the time of trial as to render objection futile. Finally, we hold that the district court properly enhanced Early's sentence for reckless endangerment of the public.

*Affirmed.*