**UNITED STATES of America, Appellee,**

v.

**Darvis Orlando DINGLE, Appellant.**

**No. 95–3168.**

United States Court of Appeals, District of Columbia Circuit.

Argued February 18, 1997.

Decided June 13, 1997.

---

Neil H. Jaffee, Assistant Federal Public Defender, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs.

Jeanne M. Hauch, Assistant U.S. Attorney, argued the cause for appellee, with whom Eric H. Holder, Jr., U.S. Attorney, John R. Fisher and Roy W. McLeese, III, Assistant U.S. Attorneys, were on the brief.

Before: WALD, GINSBURG and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Appellant Darvis Orlando Dingle appeals his conviction by a jury of possession of cocaine base with intent to distribute, 21 U.S.C. § 841(a), on the principal ground that the evidence was insufficient to establish that he either possessed any drugs, or aided and abetted his codefendant in possessing drugs. He also challenges the district court's failure *sua sponte* to instruct on the lesser included offense of possession and its drug-quantity attribution at sentencing. We hold that the evidence was sufficient to convict Dingle as an aider and abettor, and that his challenges to the instructions and his sentence are meritless; accordingly, we affirm.

## I.

Dingle was arrested after the police executed a search warrant for an apartment at 1435 Sheridan Street in Northwest Washington. Dingle, who did not own or live in the apartment, was found there along with his co-defendant, Gregory Boykin, and a small quantity of drugs. During the search, the police observed Boykin throwing a larger quantity of drugs out the window of the apartment. At the first trial, the jury convicted Boykin, but was unable to reach a verdict as to Dingle and the district court declared a mistrial. On retrial, a second jury convicted Dingle, and the district court sentenced him to 100 months' imprisonment.

The government's evidence at the second trial established that a team of officers led by Detective Milton Norris went to the door of the apartment, where Norris knocked and announced, "Police, search warrant." At that point, Norris heard footsteps inside that sounded as though a person were running toward the rear of the apartment. Norris tried to open the door, but it was locked. At that point, he instructed another officer to force the door open with a sledgehammer. The officer struck the door once, and a voice inside the apartment said, "Wait a minute, wait a minute," or words to that effect. According to Norris, the voice was fading away, as though the speaker were moving away from the door. At about the same time, officers outside the building observed a man, later identified as Boykin, tossing something out of the apartment window.

The officers forced the door open with the sledgehammer. When they entered the apartment, which was well-kept and lightly furnished, Dingle was standing near the doorway next to a small bar, and Boykin was coming out of the back bedroom. Scattered on the floor of the living room, in the hallway between the living room and the bedroom, and on a window ledge in the bedroom, were several ziplock bags containing small amounts of cocaine base. The police also found a plastic wrapping containing 3.5 grams of cocaine base on the bed in the bedroom, and a number of empty ziplock bags in a dresser drawer in the bedroom. Outside the bedroom window, the police found a plastic wrapping containing 43.04 grams of cocaine base and smaller quantities of cocaine base in ziplock bags. In addition, a razor blade and plate, both coated with cocaine residue, were on the bar next to Dingle. The police also recovered a pager and $645 on Dingle's person.

The government's narcotics expert testified that crack cocaine is typically packaged in small ziplock bags for street-level distribution. He explained that drug dealers typically break cocaine down into individual dosage units using a razor blade or other cutting implement, and that experienced drug dealers typically do not need a scale to separate cocaine into individual doses. Prior to being packaged in individual doses, crack cocaine is often stored in "bulk" form in a larger plastic bag or container. The expert further explained that drug dealers will pay others to use their residences to perform this packaging process. Finally, he explained that it is common for drug buyers and sellers to contact one another using a pager. In the expert's opinion, the evidence found in the apartment was consistent with a drug distribution operation, based on the quantity of drugs found and the manner of packaging.

Dingle testified that he went to the apartment to visit some friends, Donald Stewart and Brenda Kellogg, and their one-and-a-half-year-old daughter, who lived in the apartment. He described Stewart and Kellogg as "real good friends," whom he had

known for five years and visited two to three times a week. When he arrived, both the front door of the apartment building and the door to the apartment were unlocked. The apartment lights were on, and the radio was playing, so Dingle went inside. He decided to "play a game on Mr. Stewart" by locking the door to "teach[ ] him a lesson." After a time, Boykin knocked on the door, and Dingle, who recognized Boykin as a friend of Kellogg, let him inside the apartment. Boykin went back toward the bedroom, and Dingle sat down on a bar stool in the living room. Dingle then heard the police knock at the door, and said, "Who is it?" The officers identified themselves, and he said, "Wait a minute," and unlatched the door. Once the door was unlatched, the officers knocked it open.

Dingle also claimed that he was planning to pay the $645 to his wife, to whom he owed about $700 in child support. He testified that he had borrowed $300 from his father, and earned the rest doing "side jobs" cleaning carpets. He claimed that he had the pager so that his family and his employers could contact him.

In rebuttal, Officer Gerard Burke testified that the police did not find a baby's crib, toys, furniture, or clothes, or any women's clothes in the apartment. While the police did find a bill with Donald Stewart's name in the apartment, they were unable to locate Stewart himself; Burke had unsuccessfully attempted to contact Stewart both at the time of Dingle's arrest and during the trial. He also testified that the door to the apartment building had been left open by undercover officers so that the police could execute the search warrant.

## II.

■ In assessing the sufficiency of the evidence, the court views the evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. *See, e.g., United States v. Walker*, 99 F.3d 439, 441 (D.C.Cir.1996). Our inquiry is limited to the question of whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560

(1979). Where a defendant presents evidence in his defense, the jury is entitled to consider all of the evidence, and on appeal the court does likewise, looking to the entire record, and not simply to the evidence in the government's case-in-chief. *United States v. Foster*, 783 F.2d 1082, 1085 (D.C.Cir.1986) (en banc).

■ Dingle contends that there was insufficient evidence to convict him of possession with intent to distribute cocaine base because the government showed merely that he was present with Boykin in a small apartment where drugs were found. The government responds that there was sufficient evidence to convict Dingle of either constructively possessing the drugs in the apartment jointly with Boykin, or aiding and abetting Boykin in possessing the drugs. Of course, the "[m]ere presence of the accused on the premises, or simply his proximity to the drug," *United States v. Staten*, 581 F.2d 878, 884 (D.C.Cir.1978), is alone insufficient to establish either constructive possession or aiding and abetting. *United States v. Thorne*, 997 F.2d 1504, 1510 (D.C.Cir.), *cert. denied*, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993); *United States v. Poston*, 902 F.2d 90, 95 (D.C.Cir.1990). To establish constructive possession, the government had to show not only that Dingle knew of the drugs, but that he was in a position to exercise dominion and control over them. *United States v. Lucas*, 67 F.3d 956, 959 (D.C.Cir.1995). "There must be some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them." *United States v. Pardo*, 636 F.2d 535, 549 (D.C.Cir.1980). To establish aiding and abetting, the government had to prove both that Boykin was guilty as a principal and that Dingle had "sufficient knowledge and participation to indicate that [he] knowingly and willfully participated in the offense in a manner that indicated that he intended to make it succeed." *United States v. Raper*, 676 F.2d 841, 849 (D.C.Cir.1982).

■ The evidence is clearly sufficient to establish that Dingle knew of the drugs since

several ziplock bags containing cocaine base were in plain view on the living room floor near where he was standing. The only question is whether there was sufficient evidence that Dingle took any action that would indicate either an ability to exercise dominion and control over the drugs, or an effort to assist Boykin in possessing the drugs. The court has considered a defendant's ownership of or residence in premises where drugs are found in plain view to be sufficient evidence of dominion and control to establish constructive possession. *See, e.g., Walker,* 99 F.3d at 441; *United States v. Jenkins,* 928 F.2d 1175, 1179–80 (D.C.Cir.1991). Evidence suggesting that a defendant has regular access to the premises, such as possession of a key, may also be sufficient to establish constructive possession. *See United States v. Lindsey,* 47 F.3d 440, 445 (D.C.Cir.), *vacated on other grounds sub nom. Robinson v. United States,* —— U.S. ——, 116 S.Ct. 665, 133 L.Ed.2d 516 (1995). Here there was no evidence that Dingle owned or resided in the apartment, or that he had regular access to it. Nor is Dingle's case like *United States v. Dunn,* 846 F.2d 761 (D.C.Cir.1988), on which the government relies, where the defendant was observed pitching things into a nearby room where drugs and a gun were found. *Id.* at 764. The police did not observe any actions by Dingle that suggest such physical control over the drugs.

The government focuses on the fact that Dingle, by his own admission, shouted "wait a minute, wait a minute," when the police started to break down the door. The government characterizes this as an attempt by Dingle to stall the police to give Boykin the opportunity to dispose of the drugs. *Cf. United States v. Washington,* 12 F.3d 1128, 1136–37 (D.C.Cir.), *cert. denied,* 513 U.S. 828, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994). As Dingle contends, standing alone this evidence would be insufficient to establish his guilt beyond a reasonable doubt because any occupant of an apartment might respond in a similar manner to an attempt by the police to break down the door. However, Dingle's testimony provided further evidence that he was actively assisting Boykin in the possession of drugs. Dingle acknowledged that upon entering the apartment, he locked the door behind him, thus indicating some measure of control over the apartment and its contents. He later opened the door to admit Boykin, and then relocked it. Because the expert's testimony made clear that the apartment bore all the hallmarks of a drug packaging and distribution center, the jury could reasonably have concluded that Dingle was actively trying to assist Boykin. Dingle's possession of a large quantity of cash and a pager, which the expert described as a tool of the drug distribution trade, were also suggestive of his involvement.[1] *Washington,* 12 F.3d at 1137; *Thorne,* 997 F.2d at 1512. Taking all of these circumstances into account, the jury could reasonably conclude that Dingle's statement, "wait a minute, wait a minute," at the same time that Boykin was attempting to dispose of the drugs, was an attempt to stall the police.

Dingle's reliance on *United States v. Zeigler,* 994 F.2d 845 (D.C.Cir.1993), is misplaced. There the police searched an apartment that had previously been divided into two units, and found in one of the units cocaine, a gun, $740 in cash, and a razor blade in a locked briefcase inside a locked laundry room. *Id.* at 846. Zeigler resided in the other unit, and the government presented no evidence that she ever entered the laundry room or had the combination to the locks on the door or the briefcase. *Id.* at 848. The court rejected the government's constructive possession theory, holding the evidence insufficient to establish either knowledge of the drugs, or dominion or control over them. *Id.* As noted, Dingle's knowledge of the drugs, which were in plain view throughout the apartment, is clear, and based on Dingle's description of his activities, the jury could conclude that he knew of Boykin's drug possession and sought to assist him.

---

1. While many people possess pagers or cash for legitimate reasons, *see United States v. Brown,* 16 F.3d 423, 431 (D.C.Cir.), *cert. denied,* 513 U.S. 900, 115 S.Ct. 257, 130 L.Ed.2d 178 (1994), in this circuit possession of such items is probative evidence of both possession and intent to distribute. *United States v. Crowder,* 87 F.3d 1405, 1412 (D.C.Cir.1996) (en banc), *vacated on other grounds,* —— U.S. ——, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997).

The evidence against Dingle is comparable to the evidence in *Washington.* Washington was riding in the front passenger seat of a car as it attempted to elude police. 12 F.3d at 1131. A co-defendant who was sitting in the back seat jumped out of the car, and then ran alongside it for about a block before throwing a bag of drugs into the car through the driver's side window. *Id.* Washington acknowledged in his testimony that he had pulled the bag through the window. *Id.* at 1137. The court held that his admission, combined with Washington's possession of $586 and a pager purchased by the driver of the car, was sufficient to establish aiding and abetting. *Id.* Here, as in *Washington,* the defendant's testimony as to his actions, in conjunction with his presence on the scene and his possession of cash and a pager, is sufficient to establish aiding and abetting.

Furthermore, the jury was entitled to take into account the government's rebuttal evidence in assessing Dingle's claim of innocent presence. *See Foster,* 783 F.2d at 1085. Dingle testified that he went to the apartment to visit his friends, Stewart and Kellogg, and their one-and-a-half-year-old daughter. He claimed that Stewart and Kellogg were good friends whom he visited several times a week. Yet when the police searched the apartment, they found no evidence suggesting that either a baby or an adult woman resided in the apartment. Indeed, the only evidence to suggest that either Stewart or Kellogg had ever resided in the apartment was a single bill in Stewart's name. Officer Burke also testified that he repeatedly attempted to contact Stewart at a telephone number Dingle had provided under oath in front of the jury during the second trial, but was unable to reach him or determine a corresponding address. Based on the expert testimony, the jury could reasonably have concluded that the apartment was being used for drug packaging operations, and that Officer Burke's rebuttal testimony eviscerated Dingle's explanation that he was merely in the apartment for a friendly social visit.

In *Zeigler,* the court held that any negative inferences that a jury may draw from the demeanor of a defendant who testifies should not ordinarily be considered in a

sufficiency analysis. 994 F.2d at 849-50; *see also Thorne,* 997 F.2d at 1511. The court reasoned that "[t]here is no principled way of deciding when the government's proof, less than enough to sustain the conviction, is nevertheless enough to allow adding negative inferences from the defendant's testimony to fill the gaps." *Zeigler,* 994 F.2d at 850. Contrary to Dingle's contention, this rule poses no obstacle to appellate consideration of the government's rebuttal evidence. The *Zeigler* rule does not apply where "the defendant's testimony, on its face, [is] utterly inconsistent, incoherent, contradictory, or implausible." *Id.* at 849. While Dingle's testimony was not internally inconsistent, the government's rebuttal evidence made it extremely implausible. A jury viewing the government's evidence could reasonably find that Dingle's account was false, regardless of his demeanor, and that he was in the apartment for illicit purposes.

With or without considering the implausibility of Dingle's explanation for his presence in the apartment, the jury could reasonably conclude that he aided and abetted Boykin in the possession of drugs with the intent to distribute them. Thus, because we hold that the evidence was sufficient to support Dingle's conviction on that basis, the court need not consider whether the jury could also have reasonably found that Dingle had constructive possession of the drugs. *Griffin v. United States,* 502 U.S. 46, 56-57, 112 S.Ct. 466, 472-73, 116 L.Ed.2d 371 (1991); *Walker,* 99 F.3d at 442.

### III.

Dingle's remaining contentions do not require extensive discussion. His contention that the district court erred by failing *sua sponte* to give an instruction on the lesser included offense of simple possession is meritless. Because Dingle neither asked for such an instruction nor objected to the district court's failure to give one, our review is for plain error, and we find none. FED. R.CRIM. P. 30, 52; *United States v. Campbell,* 684 F.2d 141, 148 (D.C.Cir.1982); *see also United States v. Olano,* 507 U.S. 725, 732-37, 113 S.Ct. 1770, 1776-80, 123 L.Ed.2d 508 (1993). It has long been the rule in this

circuit that "[i]n general, the trial judge should withhold charging on [a] lesser included offense unless one of the parties requests it, since that charge is not inevitably required in our trials, but is an issue best resolved, in our adversary system, by permitting counsel to decide on tactics." *Walker v. United States,* 418 F.2d 1116, 1119 (D.C.Cir.1969). In deciding whether to request such an instruction, defense counsel must make a strategic choice: giving the instruction may decrease the chance that the jury will convict for the greater offense, but it also may decrease the chance of an outright acquittal. Here, defense counsel adverted to precisely such a choice during a colloquy with the district court about the verdict form; defense counsel maintained that the government could not show, as the indictment charged, that Dingle possessed with intent to distribute 50 grams, and that a special verdict form on drug quantity was therefore appropriate. Although the district court rejected the special verdict form request, defense counsel did not seek an instruction on simple possession, possibly because Dingle had testified that he did not use cocaine and that he had simply come to the apartment to visit his friends. Defense counsel then chose to argue to the jury that the government's evidence was insufficient and Dingle was simply in the wrong place at the wrong time. In view of that strategic decision, Dingle has not demonstrated that it was plain error for the district court not to give a lesser included offense instruction.

■ Finally, Dingle's contention that the district court erred in attributing to him, for purposes of sentencing, the entire quantity of drugs that Boykin threw out the window, in addition to the much smaller quantities found on the living room floor, is meritless. The evidence was sufficient to establish that Dingle aided and abetted Boykin; he is therefore responsible for the same quantity of drugs that Boykin possessed. 18 U.S.C. § 2; U.S. SENTENCING GUIDELINES MANUAL §§ 1B1.3, 2X2.1 (1995); *see also United States v. Nieto,* 60 F.3d 1464, 1469 n. 4 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996); *United States v. Pierson,* 53 F.3d 62, 64–65 (4th Cir.1995). Because the district court's finding that Boykin and Dingle jointly possessed all of the cocaine in the apartment, except for the rock found on the bed in the bedroom, is not clearly erroneous, *see United States v. Lam Kwong–Wah,* 966 F.2d 682, 688–89 (D.C.Cir.), *cert. denied,* 506 U.S. 901, 113 S.Ct. 287, 121 L.Ed.2d 213 (1992), the district court properly sentenced both defendants in the guidelines range appropriate for possession of 35 to 50 grams of cocaine base.

Accordingly, we affirm the judgment of conviction.