**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

Nos. 98-40117, 98-40119, 98-40120, 98-40121
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONIEA VASHUN THOMPSON; VERNON MAURICE TYLER; CHARLES LAMONT
WHITTING; BRIAN JEROME THORN

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas
USDC Nos.  1:97-CR-63-1, 1:97-CR-63-2, 1:97-CR-63-3, 1:97-CR-4

December 16, 1998
Before KING, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

Toniea Vashun Thompson, Vernon Maurice Tyler, Charles Lamont Whitting, and Brian

Jerome Thorn pled guilty to count 2 of a three-count indictment charging them with bank robbery,

in violation of 18 U.S.C. § 2113(a) & (d).  Thompson and Thorn were sentenced to terms of

imprisonment of 226 months, together with five-year terms of supervised release.  Tyler and Whitting

were sentenced to terms of imprisonment of 168 months, together with five-year terms of supervised

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR R. 47.5.4.

release. Each of the defendants was also ordered, jointly and severally, to pay restitution in the amount of $1,333.12 to the First National Bank of Dayton.

All four defendants gave timely notice of their appeals. Jointly, the appellants advance two challenges to their sentences, all of which involve claims of misapplications of the Sentencing Guidelines. In addition, Whitting and Thorn raise one additional Sentencing Guidelines issue each. For the foregoing reasons, we AFFIRM each appellant's sentence.

**I**

The appellants have raised issues respecting the district court's determination of their sentences under the Sentencing Guidelines. "Review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and was unreasonable." United States v. Matovsky, 935 F.2d 719, 721 (5th Cir. 1991). Legal conclusions by the district court are reviewed de novo, and findings of fact are reviewed for clear error. See United States v. Fitzhugh, 984 F.2d 143, 146 (5th Cir. 1993).

"For sentencing purposes, the district court [could] consider any relevant evidence 'without regard to its admissibility under the rules of evidence applicable at trial, provided that the information [had] sufficient indicia of reliability to support its probable accuracy.'" United States v. Young, 981 F.2d 180, 185 (5th Cir. 1992) (quoting U.S.S.G. § 6A1.3). "[A] presentence report generally bears sufficient indicia of reliability to be considered as evidence by the trial court in making the factual determinations required by the Guidelines." United States v. Robins, 978 F.2d 881, 889 (5th Cir. 1992).

## II

All four appellants contend that the district court erred by increasing their offense levels, pursuant to U.S.S.G. § 3C1.2, for reckless endangerment during flight.[**] The probation officer reported that officers responding to a silent alarm at the First National Bank of Dayton observed the appellants, three of whom were armed with guns, exiting the bank with a duffel bag. The officers identified themselves as police and ordered the men to "freeze." One of the officers heard shots and began firing at the appellants. Another officer stated that he saw one of the robbers motion with his gun and that he began firing for that reason. Tyler was shot in the leg as the men piled into their vehicle and drove away. None of the robbers fired their guns and it was later determined that the initial shots had been fired by an off-duty policeman who was not visible to the officers. The appellants fled in their vehicle and tried to elude police, running stop signs and driving into oncoming traffic. They eventually drove down a dead-end road. At this point, the police officers again identified themselves, but the appellants exited the vehicle and fled on foot. The officers, who later stated that they feared for their own safety, began to fire at the fleeing suspects. Eventually, the four were arrested.

Under guidelines section 3C1.2, a defendant's offense level is raised if he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The commentary to § 3C1.2 cross references the definition of the term "reckless" in the commentary to U.S.S.G. § 2A1.4. See § 3C1.2 comment.

---

[**]Whitting individually argues that he should not have received the § 3C1.2 enhancement because he was not driving the get-away vehicle. This argument is without merit. Whitting was convicted as an aider and abetter. The guideline commentary provides that aiders and abetters are also subject to the enhancement. See § 3C1.2, comment. (n.5); see also United States v. Lugman, 130 F.3d 113, 116-17 (5th Cir. 1997), cert. denied , 118 S. Ct. 1855 (1998).

(n.2). The commentary to § 2A1.4 defines "reckless" as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." § 2A1.4. The probation officer stated that the adjustment was warranted because "[t]he defendants caused the police to shoot at them while in public and also forced the police to chase them (defendants) while they fled in a car which at times went into oncoming traffic, and which ran stop signs."

Appellants first argue that they did not create a substantial risk of death or bodily injury to another in fleeing from law enforcement. This claim has no merit. They traveled down a one way street into oncoming traffic and ran several stop signs while the police gave chase. It is quite possible that an innocent third party, not to mention one of the appellants or pursuing police officers, could have been injured as a result of their escape route. Cf. United States v. Chandler, 12 F.3d 1427, 1434 (7th Cir. 1994)(noting that potential injuries to innocent bystanders were sufficient to warrant imposition of § 3C1.2 enhancement).

The appellants also contend that they were not given a realistic opportunity to surrender and fled out of fear for their own safety. Shots were fired at the appellants before they were given an opportunity to surrender and at least three police officers were firing at them as they fled. Appellants submit that this conduct did not constitute a "gross deviation from the standard of care" that a "reasonable person would exercise" under these circumstances.

We can reverse, however, only if we find clear error. See United States v. Washington, 12 F.3d 1128, 1139 (D.C.Cir. 1994). We find clear error if we are left with the definite and firm conviction that a mistake has been committed. See Anderson v. City of Bessemer, 470 U.S. 564, 573

4

(1985). Ultimately, we cannot say we are so persuaded. The appellants could have thrown their guns, which were never fired during the chase, from the car while the police officers were in pursuit -- diffusing tensions and signaling surrender. Rather than fleeing on foot, the appellants could also have surrendered when they were trapped down the dead-end road, at which moment the police again identified themselves. Considering the applicable standard of review, and given these facts, we affirm the district court's use of § 3C1.2 in appellants' sentencing.

## III

All of the appellants contend that the district court erred by increasing their offense levels pursuant to U.S.S.G. § 2B3.1(b)(3)(B), because injuries sustained by bank employees during the robbery were not serious. Under § 2B3.1(b)(3)(B), the guideline level for robbery is increased by four levels if any victim sustained "serious bodily injury."

All eight bank victims were examined by a clinical psychiatrist, Edward Gripon. Two denied having any significant psychiatric or emotional symptomatology. Four did not meet the criteria for any emotional or mental disorder. Two, however, co ntinued to "'hav[e] some difficulty.'" One suffered from a "mild form of Post Traumatic Stress" and was "having some recurrent" thoughts of the incident, approximately three to four times weekly. She stated, however, that her symptoms were not causing her substantial difficulty and were not limiting her life in any significant manner. Gripon expected the symptomatology to resolve within four to six months.

The final victim had developed "obvious symptoms of anxiety and depression," and had been under the care of a counselor and a psychiatrist. This victim was taking psychotropic medications and reported social isolation, withdrawal, difficulty sleeping, intermittent nightmares, feelings of

vulnerability, and some personality change. Although Gripon believed she would fully recover, he would not project a time frame for her recovery. At the time the sentencing hearing was held, which was approximately eight months after the robbery, this victim's treating psychiatrist had ordered her not to work because she is not mentally able to return to the workplace. The district court concluded that this victim had suffered a "protracted impairment" and overruled the objections to imposition of the § 2B3.1(b)(3)(B) enhancement.

We must decide whether this eighth victim's psychiatric problems resulting from the bank robbery fall within the term "serious bodily injury" in § 2B3.1(b)(3)(B). The term "serious bodily injury" is defined in the commentary to U.S.S.G. § 1B1.1: "'Serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." § 1B1.1, comment. (n.1(j)). The appellants argue that the victim bank employees suffered psychological injuries only and that their injuries were not sufficiently severe to warrant imposition of the § 2B3.1(b)(3)(B) enhancement.

In United States v. Reed, 26 F.3d 523, 530-31 (5th Cir. 1994), we held that "post traumatic stress disorder" could be a "serious bodily injury" for purposes of § 2B3.1(b)(3)(B). In Reed, the victim suffered from a "serious psychiatric disorder" as a result of the defendant's conduct which rendered her unable to distinguish threatening from non-threatening situations. See id. at 530-31. According to one doctor's assessment, her experience had turned a "high-functioning, employed, hard-working, independent woman, who also successfully handled parenting of two children and running a household, into a frightened, dependent, non-functional psychiatric casualty with a severe psychiatric disorder." Id. at 530 (emphasis added). With these facts, we held that the victim had

6

suffered an impairment of a "mental faculty" under the definition of "serious bodily injury" in the commentary to § 1B1.1. See id. at 530.

We hold that the victim's injuries in this case are sufficient to warrant the "serious bodily injury" penalty enhancement. As the district court found, her injuries, most notably not being able to work, remained despite an eight month time lapse since the incident. This is "protracted" within the meaning of U.S.S.G. §§ 1B1.1 and 2B3.1(b)(3)(B), and we thus affirm the district court's imposition of the penalty enhancement.

## IV

Thorn contends that the district court erred in holding that a firearm was "otherwise used" for purposes of U.S.S.G. § 2B3.1(b)(2)(B) and increasing his offense level by six levels. Under § 2B3.1(b)(2), if a firearm was discharged during a robbery, the defendant's offense level is increased by seven levels. See § 2B3.1(b)(2)(A). If a firearm was "otherwise used" during the robbery, the offense level is increased by six levels. See § 2B3.1(b)(2)(B). If a firearm was "brandished, displayed, or possessed," the defendant's offense level is increased by five levels. See § 2B3.1(b)(2)(C). Thorn argues that the five-level enhancement was more appropriate under the facts of this case. Because the appellants had held guns to the heads of the victims and had threatened to shoot them, the district court held that the defendants had not merely "brandished" their weapons and overruled Thorn's objection to the six-level enhancement.

The term "otherwise used" is defined in the commentary to § 1B1.1 to mean with reference to a dangerous weapon "that the conduct did not amount to discharge of a firearm but was more than brandishing, displaying, or possessing a firearm . . . ." § 1B1.1, comment. (n.1(g)). Here, appellants

7

did more than point a gun at someone from a distance. They held the guns to their victims' heads and threatened to shoot them. The district court's conclusion was not clearly erroneous and is thus affirmed.

## Conclusion

For the reasons set forth above, we AFFIRM each appellant's sentence.