In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-2972

CHRISTOPHER M. TORZALA,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 C 813—**Rudolph T. Randa**, *Chief Judge.*

ARGUED FEBRUARY 8, 2007—DECIDED SEPTEMBER 19, 2008

Before RIPPLE, MANION, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Christopher Torzala pled guilty to one count of obstruction of justice in violation of 18 U.S.C. § 1503. He then filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, arguing that his conduct did not constitute a crime. Because we find that Torzala knowingly and voluntarily entered into his guilty plea and that he received effective assistance of counsel, we affirm the district court's denial of Torzala's motion.

## I. BACKGROUND

Christopher Torzala was a licensed real estate broker operating Torzala Realty in Milwaukee, Wisconsin. Through a mutual acquaintance, he met Kirk Polinske, a loan originator at Bayshore Mortgage. Bayshore Mortgage arranged financing through out-of-state lenders.

Torzala had a portfolio of around thirty investment properties that he sought to sell. Polinske told Torzala he could help him sell the properties but that Torzala would need to pay him $5,000 for every property that closed. Polinske also told Torzala that the deals would have to be "structured," meaning that Torzala had to bring his own funds to the closing to cover the costs traditionally paid by the buyer, including closing costs, down payments, and second mortgages. These contributions would not be reflected on the closing documents.

On June 14, 2002, an FBI agent interviewed Torzala. Torzala later admitted making several false statements during that interview, including that he had never provided funds to a buyer at closing in order to falsify equity in a deal. And although Torzala stated during the interview that he did not know any of the participants in ongoing mortgage fraud at Bayshore, he later acknowledged that he knew that Polinske and others at Bayshore had engaged in fraud during a number of real estate transactions, including those involving Torzala. Torzala also later admitted that he knew at the time he spoke with the FBI agent that the FBI was investigating Polinske and Torzala's own transactions.

Three months after Torzala spoke with the FBI agent, a grand jury indicted Daniel Wichman, the head of Bayshore Mortgage, on counts of fraud and money laundering. Bayshore employees John McGowan and Todd McGowan had been indicted in 2000 and pled guilty the following year. Polinske received immunity from the government for his cooperation.

In Torzala's case, the government filed a one-count information in federal court alleging that he obstructed justice in connection with an investigation of "property flipping and other fraudulent real estate practices," in violation of 18 U.S.C. § 1503. The charge further alleged that the investigation was part of ongoing judicial proceedings, "including grand jury and other criminal proceedings," and that Torzala endeavored to obstruct justice by lying to the FBI about his knowledge of property flipping activity. That same day, the parties filed a plea agreement in which Torzala agreed to plead guilty to the single charge. He later formally entered his guilty plea and eventually received a sentence of eighteen months' imprisonment and two years' supervised release. The government had initially suggested a lower sentence, but after Torzala showed up at the Milwaukee airport two days before his sentencing ready to board a flight to New Zealand with over $13,000 in cash, a cashier's check for $10,000, more than twenty credit cards, and thirty-eight blank checks in hand—all while under order not to leave the state—the government changed its sentencing recommendation.

Torzala did not take a direct appeal. Instead, he filed a motion to vacate, set aside, or correct his sentence

pursuant to 28 U.S.C. § 2255. Torzala did not submit any affidavits in support of his motion, and the district court denied the motion without holding a hearing. Torzala appeals.

## II. ANALYSIS

Torzala seeks relief under 28 U.S.C. § 2255, which allows "[a] prisoner in custody" to seek relief. That Torzala is no longer in custody or on supervised release, and had neither status at the time the district court denied his motion, does not preclude our review. Torzala was in custody when he filed the motion, and that is all that is required to be "in custody" under the statute. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Virsnieks v. Smith*, 521 F.3d 707, 717-18 (7th Cir. 2008) (discussing "in custody" requirement). Moreover, we presume collateral consequences from his criminal conviction. *See Spencer*, 523 U.S. at 12; *A.M. v. Butler*, 360 F.3d 787, 790 n.4 (7th Cir. 2006). Torzala asserts, and the government does not dispute, that he continues to suffer adverse consequences from his conviction in, for example, the inability to possess firearms lawfully. *See* 18 U.S.C. § 922(g)(1) (prohibiting felons from possessing firearms); *Gentry v. Deuth*, 456 F.3d 687, 695 (6th Cir. 2006). As a result, the matter is not moot, and we proceed to review Torzala's claim. In doing so, we review the district court's findings of law de novo and its findings of fact for clear error. *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006).

Torzala argues that he "was induced to plead guilty by his defense attorney, the prosecutor and the presiding

judge" because they "convinced him that he was guilty"
of committing obstruction of justice in violation of
18 U.S.C. § 1503. Although Torzala contends that the
record contains insufficient proof that he was guilty of
the crime to which he pled, he does not maintain that he
is actually innocent of obstructing justice. *Cf. Davis v.
United States*, 417 U.S. 333, 346-47 (U.S. 1974) (actual
innocence supports collateral relief under § 2255).

It is not easy to vacate a guilty plea in a collateral pro-
ceeding like this one. First, relief under § 2255 is available
only when the "sentence was imposed in violation of
the Constitution or laws of the United States," the court
lacked jurisdiction, the sentence was greater than the
maximum authorized by law, or it is otherwise subject
to collateral attack. Moreover, a defendant who know-
ingly and voluntarily enters a guilty plea admits not
simply that he committed the acts charged in the indict-
ment; it is an "admission that he committed the crime
charged against him." *Young v. United States*, 124 F.3d 794,
797 (7th Cir. 1997) (citing *North Carolina v. Alford*, 400
U.S. 25, 32 (1970)); *see United States v. Broce*, 488 U.S. 563,
570-71 (U.S. 1989). Because "[a] guilty plea operates as a
waiver of important rights," it is constitutionally valid
"only if done voluntarily, knowingly, and intelligently,
'with sufficient awareness of the relevant circumstances
and likely consequences.'" *Bradshaw v. Stumpf*, 545 U.S.
175, 183 (2005) (citing *Brady v. United States*, 397 U.S. 742,
748 (1970)).

Nonetheless, "even the voluntariness and intelligence
of a guilty plea can be attacked on collateral review only
if first challenged on direct review." *Bousley v. United*

*States*, 523 U.S. 614, 621 (1998). By failing to take a direct appeal, Torzala procedurally defaulted the argument that he appears to raise here—that he did not knowingly and voluntarily enter his plea of guilty. A claim that has been procedurally defaulted ordinarily may only be raised in a § 2255 proceeding if the defendant demonstrates that he is "actually innocent," or that there is "cause" and actual prejudice. *Id.* at 622. Because the government did not assert procedural default as a defense in this action but instead chose to respond on the merits, however, the government has waived the procedural default. *Buggs v. United States*, 153 F.3d 439, 444 (7th Cir. 1998). And because Torzala's arguments ultimately have no merit, as in *Buggs*, we "believe that considerations of judicial efficiency counsel that we address the merits." *See id.*

"A plea agreement is constitutionally valid if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant,'" *Hays v. United States*, 397 F.3d 564, 570 (7th Cir. 2005) (citations omitted), and we look to all of the relevant circumstances surrounding the plea when determining whether this standard has been met, *Virsneiks*, 521 F.3d at 714. A defendant does not enter a plea voluntarily, knowingly, and intelligently if he pleads guilty to a crime without knowledge of the crime's essential elements. *Stumpf*, 545 U.S. at 183 (citing *Henderson v. Morgan*, 426 U.S. 637 (1976)). And if "neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," a plea is constitutionally invalid as well. *Bousley*, 523 U.S. at 619; *see also United*

*States v. Davis*, 212 F.2d 264, 267 (7th Cir. 1954). In *United States v. Bradley*, 381 F.3d 641 (7th Cir. 2004), for example, we granted a defendant's motion to withdraw his guilty plea when he admitted only to possessing marijuana. The indictment, however, charged the defendant with *trafficking* in *cocaine base*, and the prosecutor incorrectly suggested at the plea hearing that to sustain the conviction, the government needed only to prove that the defendant had possessed illegal drugs. *Id.* at 644. Although *Bradley* did not come to us in a collateral proceeding, we reasoned that it presented not only a violation of the requirement in Federal Rule of Criminal Procedure 11 that a guilty plea have a factual basis, but a constitutional violation as well. *Id.* at 647 n.4.

The record in this case, in contrast, belies Torzala's suggestion that his plea was not knowing and voluntary. Torzala pled guilty to obstruction of justice in violation of the "catchall" clause in 18 U.S.C. § 1503, which provides that a crime occurs when a person "corruptly . . . influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." The broadly-worded catchall is not without limits. To sustain a conviction under this provision, the government must prove: (1) a judicial proceeding was pending; (2) the defendant knew of the proceeding; and (3) the defendant corruptly intended to impede the administration of that proceeding. *United States v. Macari*, 453 F.3d 926, 936 (7th Cir. 2006); *United States v. Fassnacht*, 332 F.3d 440, 447 (7th Cir. 2003).

In this case, the charging information accurately set forth each of these elements, as did the plea agree-

ment Torzala signed. In addition, at the change of plea hearing, the district court read Torzala each of the crime's elements, and Torzala affirmed that he understood that they constituted the elements of the offense. *Cf. Henderson*, 426 U.S. at 647 (affirming grant of habeas relief on basis that guilty plea was not voluntary where neither counsel nor court informed defendant that intent to cause victim's death was essential element of second-degree murder).

In particular, Torzala admitted there was a "pending judicial proceeding" within the scope of § 1503 at the time he gave his false statements to the FBI. A grand jury investigation constitutes a "pending judicial proceeding" for purposes of 18 U.S.C. § 1503. *United States v. Aguilar*, 515 U.S. 593, 600-01 (1995); *Macari*, 453 F.3d at 936. Although an investigation by the FBI, in contrast, does not always suffice, *Aguilar*, 515 U.S. at 600; *Macari*, 453 F.3d at 936, such an investigation falls within section 1503's purview when the FBI undertakes an investigation with the intention of presenting evidence before the grand jury. *See Aguilar*, 515 U.S. at 600-01; *United States v. Maloney*, 71 F.3d 645, 657 (7th Cir. 1995).

At Torzala's plea hearing, the prosecutor stated that the government had an ongoing investigation into individuals associated with Bayshore Mortgage and that Torzala knew Polinske was under investigation when Torzala spoke with the FBI. Seizing on these statements, Torzala points out that an investigation alone is insufficient to establish that a judicial proceeding was pending at the time. Torzala's argument, however, ignores the other

evidence in the record. The plea agreement he signed states that the investigation "was part of ongoing official proceedings in the Eastern District of Wisconsin, *including grand jury* and other criminal proceedings" (emphasis added). The district court then stated at the change of plea hearing that an element of the offense was "that there were judicial proceedings pending; criminal cases and Grand Jury investigation into real estate fraud," and Torzala acknowledged that he understood the elements of the offense. All of this was consistent with the information's charge that the investigation was part of "ongoing official proceedings, including grand jury and other criminal proceedings." Although Torzala is correct that a "mere" government investigation does not necessarily equate to a judicial proceeding punishable under § 1503, Torzala acknowledged multiple times that he was pleading guilty to making false statements while an investigation related to grand jury proceedings was pending.[1]

Next, it is true that demonstrating a defendant's awareness of an FBI investigation is not sufficient to establish a § 1503 violation; rather, the defendant must be aware of an investigation related to judicial proceedings. *Aguilar*, 515 U.S. at 599. Again, however, the record is clear that all involved proceeded with this understanding. Torzala

---

[1] We also note that the grand jury indicted Wichman on September 10, 2002. That Wichman's indictment came only a few months after Torzala made his false statements to the FBI is consistent with the existence of an ongoing grand jury investigation at the time Torzala made his false statements.

said at the plea hearing that he knew there was an ongoing investigation by the FBI when he made the false statements. Alone, that statement might not be enough, but the district court also told Torzala at the hearing that the offense required proof that he knew of pending judicial proceedings, namely grand jury investigations and criminal cases, when he made the false statements. In addition, the plea agreement Torzala signed states he understood that to sustain the crime charged, the government needed to prove that "there were judicial proceedings (i.e., criminal cases and grand jury investigations into real estate fraud)" and that he "was aware of the proceedings." In short, the indictment, plea agreement, and exchange during the change of plea hearing all demonstrate that Torzala "pleaded guilty after being correctly informed as to the essential nature of the charge against him." *Bousley*, 523 U.S. at 619. Torzala's plea was knowing and voluntary.

The essence of Torzala's arguments suggests that he believes the government failed to prove he violated § 1503 or that Federal Rule of Criminal Procedure 11(b)(3)'s requirement that the court establish a factual basis before accepting a plea was not met. But Torzala gave up the ability to hold the government to its proof when he entered his plea of guilty. *See Broce*, 488 U.S. at 571. And a violation of Rule 11, even of Rule 11(b)(3), does not alone require relief from a conviction. *See United States v. Timmreck*, 441 U.S. 780, 783-84 (1979) (violation of Rule 11 does not mandate collateral relief); *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (defendant who raises Rule 11 violation for first time on direct appeal after entering plea must show that but for the error, he

would not have entered the plea); *United States v. Arenal*, 500 F.3d 634, 637 (7th Cir. 2007) (*Dominquez Benitez* applies to challenges to Rule 11(b)(3) factual basis for plea). As we have said before, "the Constitution 'does not require the establishment in all cases of a factual basis for a guilty plea.'" *Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) (quoting *United States v. Johnson*, 612 F.2d 305, 309 (7th Cir. 1980)). Of course, "'where it is impossible to find guilt from the facts stated as the factual basis for the plea,' the court is apt to find the plea involuntary," *id.*, but on this record, it is not impossible to find guilt.

Torzala also contends that his counsel was ineffective. Although he did not directly appeal his conviction, an ineffective assistance of counsel claim may be raised for the first time in a § 2255 proceeding as Torzala did here. *Massaro v. United States*, 538 U.S. 500, 509 (2003). To succeed on a claim that an attorney rendered ineffective assistance of counsel when a defendant entered a guilty plea, the defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pled guilty and would have insisted on proceeding to trial. *Bethel*, 458 F.3d at 716. Torzala alleges that his attorney failed to advise him that his conduct did not amount to a violation of § 1503 and failed to tell him that elements required to prove such a violation were not present. But as we have discussed, the indictment, plea agreement, and the district court judge all correctly set forth the elements required to prove a § 1503 violation and related those elements to his case, and Torzala admitted in his plea agreement and at the change of plea hearing that he was guilty of the

offense charged. Torzala's additional claim that his attorney promised he would only receive probation if he pled guilty is, first of all, inconsistent with the plea agreement he signed that lists an expected guideline sentencing range of six to twelve months. Moreover, Torzala's arrest two days before his sentencing, on his way to board a flight to New Zealand in violation of his conditions of release, doomed any chance he had for a lenient sentence. Torzala's counsel's performance did not fall below an objective standard of reasonableness.

We address Torzala's remaining arguments briefly. First, the district court did not abuse its discretion when it decided Torzala's § 2255 motion without holding a hearing. Torzala did not submit any affidavits in support of his motion, and the district court "has discretion to deny an evidentiary hearing where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004). That is the case here. Finally, our decision in *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005), forecloses Torzala's argument that he should receive the benefit of *United States v. Booker*, 543 U.S. 220 (2005), in this collateral challenge.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.