In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3579

RENATO DEBARTOLO,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:14-cv-01620-RLM — **Robert L. Miller, Jr.,** *Judge*.

ARGUED JUNE 9, 2015 — DECIDED JUNE 26, 2015

Before POSNER, KANNE, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. Renato DeBartolo, 48 years old, immigrated to the United States with his family at the age of one, but unlike most of his family never got around to applying for U.S. citizenship. He is married to an American citizen, however, and his seven or ten children (the correct number is uncertain) are of course American citizens as well. He has no family in Italy and has never learned Italian. Until

recently deported to Italy, he lived in Indiana, where he owned a small construction company from 2008 to 2010. In 1996 he had been sentenced in an Indiana court to eight years in prison for dealing in cocaine, but the last four years had been suspended, so he had been released after four years; and no removal (i.e., deportation) proceedings had been instituted against him. In 2011 he was indicted in federal court for possessing with intent to distribute more than 100 marijuana plants and with manufacturing (not the right word—marijuana plants are grown rather than manufactured—but the statutory term) more than 100 such plants (the same plants), both being violations of 21 U.S.C. § 841(a)(1). He had grown the plants in a barn. Marijuana plants need bright light to grow to their maximum size, and DeBartolo had powered the lighting fixtures in the barn with electricity that he stole from the electric company by running a clandestine power line from the company's line to his barn.

The minimum statutory prison term for the offense to which he pleaded guilty was five years. But as a result of the help he gave the government after his arrest to apprehend other drug dealers in his area, and of his pleading guilty to the manufacturing offense (thus sparing the government the bother and uncertainty of a trial), the government moved for a below-minimum sentence after citing the substantial assistance to law enforcement that DeBartolo had rendered. On the basis of the plea deal, the district judge sentenced DeBartolo to only 25 months in prison. See 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. The distribution charge was dropped, and though DeBartolo pleaded guilty in state court to the electricity theft, the state court imposed a prison sentence to run concurrently with his federal sentence.

There was no mention of deportation in the federal case. But unbeknownst to DeBartolo, and also it seems to his lawyer, the prosecutors, and the judge, his conviction of the drug offense made him deportable ("removable" is the official term) and, were he ordered removed, would prevent him from applying for cancellation of removal. See 8 U.S.C. §§ 1101(a)(43), 1227(a)(2)(A)(iii), (B)(i), 1229b(a)(3).

Removal proceedings were indeed instituted, and after he completed his prison sentence he was removed to Italy, where he remains. But while his removal case was pending he had filed a motion in the district court under 28 U.S.C. § 2255(a), claiming that he had been denied effective assistance of counsel in his criminal case in violation of the Sixth Amendment, because his lawyer had failed to warn him that if he were convicted he could well be deported; nor had he been told by anyone else. The relief he sought in his section 2255(a) petition for the failure to warn him of the risk of removal was withdrawal of his guilty plea, which would enable him to request a trial or try to negotiate a plea of guilty to a non-removable offense. The judge denied the petition, precipitating this appeal.

The failure to inform a defendant that if convicted he will be deported was held by the Supreme Court in *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010), to be ineffective assistance of counsel, violative of the Sixth Amendment. As later noted in *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process … that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." But there

are two kickers. The defendant must show that if his counsel had not made the error of which he complains (in this case failing to warn the defendant that he faced deportation if convicted, as he would be if he pleaded guilty), there was a "reasonable probability" that he (the defendant) would have gone to trial rather than have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); see also *Padilla v. Kentucky*, *supra*, 559 U.S. at 366; *Kovacs v. United States*, 744 F.3d 44, 51 (2d Cir. 2014). The defendant must also show that to reject the plea bargain and go to trial would have been "rational under the circumstances." *Padilla v. Kentucky*, *supra*, 559 U.S. at 372; *Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).

A mentally competent criminal defendant who decides to stand trial even though he's almost certain to be convicted, and who by pleading guilty would be assured of a much lighter sentence than if convicted after a trial, nevertheless can't be ordered by the judge to plead guilty; a judge can't plead a defendant guilty however much the plea would be in the defendant's best interest. Why should the rule be different if the defendant, upon belated discovery of a deportation threat about which his counsel failed to warn him, chooses to withdraw a plea of guilty and risk a trial that may result in a long sentence?

If the two verbal formulas are substantively different, the difference is that the "reasonable probability" formula asks only what the defendant would have done had he known he faced deportation, while the "rational under the circumstances" formula asks what he'd have done were he a reasonable person. The first standard is more congenial to the usual understanding of the criminal process, which is that a

criminal defendant, unless mentally incompetent (in which event he can't be prosecuted until cured), has a right to a jury trial no matter how slight his chances of prevailing.

DeBartolo unquestionably wants to roll the dice, which is strong evidence that he also would have chosen to roll the dice four years ago had he known about the deportation threat. He faces the same risk of conviction and a long sentence now that he did then. His personal choice to roll the dice is enough to satisfy the "reasonable probability" standard.

The government wobbles between the two standards for allowing the withdrawal of one's guilty plea upon belated discovery of the deportation threat. Mainly it argues—and the district judge agreed in denying DeBartolo's motion to vacate his guilty plea—that the evidence is so stacked against DeBartolo that he would not in fact have insisted on a trial even if he'd known he'd be deported as a consequence of pleading guilty and therefore of being convicted. But the government also argues, though at lesser length, that it would have been "irrational" for DeBartolo to insist on a trial, which sounds like the "rational under the circumstances" test.

Judges and prosecutors should hesitate to speculate on what a defendant would have done in changed circumstances. The district court's decision oversimplifies the factors that DeBartolo would have had to weigh had he known he'd be facing deportation if convicted, in deciding whether to seek a trial rather than, as he did, plead guilty. The government thought a 25-month sentence adequate punishment. How differently would it have felt had he been tried by a jury and convicted? Had the government sought a much heavier sen-

tence in order to punish him for putting it to the bother of a trial, mightn't that have been deemed vindictive? The government says that had DeBartolo not pleaded guilty it would have filed an information under 21 U.S.C. § 851 noting De-Bartolo's previous drug conviction, which would have increased the mandatory minimum sentence for his current crime from 5 to 10 years. But it does not explain *why* it would have pressed for such a long sentence after having been content with a 25-month sentence. Could a federal prosecutor argue with a straight face that 8 years added to a 2-year sentence is a just punishment for exercising the constitutional right to trial by jury in a federal criminal case?

And suppose he'd gotten a heavier sentence after the trial just because the government and maybe the judge would have been angry at his refusing to plead guilty. Had he been sentenced to prison for 10 years he would be entitled to slightly more than a year off if he behaved himself (as he would be likely to do since he's not a violent person and was already 47 years old when convicted). Furthermore, conviction would not have been the sure thing that the government claims. His defense, we are told, would have been that his marijuana project was a flop, that he had obtained only a few ounces of the drug from it, and that he had given that meager harvest away rather than selling it.

The government would have presented contrary evidence, but in light of the growing movement to legalize the sale of marijuana and the absence of any suggestion of guns or violence associated with DeBartolo's criminal activity, a jury might have thought his offense trivial and either acquitted him or convicted him of some lesser offense, such as simple possession of marijuana (which would not have been

a basis for mandatory deportation), had the jury been given the option of convicting of the lesser offense. A survey conducted in 2001 and 2002 revealed that 39 percent of potential white jurors and 50 percent of potential black jurors would be "very willing" or "mostly willing" to acquit, despite evidence of guilt, in a first-time nonviolent drug possession case. Lawrence D. Bobo & Victor Thompson, "Racialized Mass Incarceration: Poverty, Prejudice, and Punishment," in *Doing Race: 21 Essays for the 21st Century* 343 (Hazel R. Markus & Paula Moya eds., 2010) (Fig. 12.9). (Granted, this was not the defendant's first drug case, though a number of years had separated the two cases.) "Montana prosecutors were forced to offer a defendant in a marijuana case a favorable plea bargain after so many potential jurors said they would nullify that the judge didn't think he could find enough jurors to hear the case." Paul Butler, "Jurors Need to Know That They Can Say No," *N.Y. Times*, Dec. 20, 2011, p. A39; see also Jesse McKinley, "Montana Jurors Raise Hopes of Marijuana Advocates," *N.Y. Times*, Dec. 23, 2010, p. A20. Today 51 percent of adult Americans think that recreational use of marijuana should be legal. *Gallup*, "Majority Continues to Support Pot Legalization in U.S.," 2014, www.gallup. com/poll/179195/majority-continues-support-pot-legalization.aspx (visited June 19, 2015).

We don't condone jury nullification. But a criminal defendant cannot be denied the right to a trial, and forced to plead guilty, because he has no sturdy legal leg to stand on but thinks he has a chance that the jury will acquit him even if it thinks he's guilty.

Besides, even if DeBartolo knew that the likelihood of his being acquitted at a trial was slim, he would still have had

reasons to reject the plea offer. He could have tried to negotiate a different plea deal for an offense that does not make deportation mandatory. For example, he could have offered to plead guilty to simple possession of 30 grams of marijuana and perhaps received the same 25-month sentence. Or he might have thought a small chance of remaining with his family in the United States worth the significant risk of a long prison term. He might even have preferred a lengthy prison term in the United States to a shorter prison term that would lead more quickly to deportation, because the lengthy prison term would at least keep him in the same country as his family, facilitating frequent visits by family members, which is important to prisoners. Separation from his family may have been a big concern to him if deported, as his children, having been born in the United States and presumably not knowing Italian, would not be likely to follow him to Italy.

Neither the parties nor the district judge considered the bearing of the fact that DeBartolo is seeking a trial in 2015 rather than 2011, when he pleaded guilty. Today even a 10-year sentence would amount to only about 6 years of imprisonment, because he could expect not only a year or so off the sentence for good behavior but also credit for the two years he spent in prison and the year or so that he spent in the custody of the immigration authorities between the end of his prison term and his deportation.

Also to be considered is the disarray in the enforcement of U.S. immigration law. There are believed to be at least 10 million illegal immigrants in the United States, implying significant underenforcement of the immigration laws. There are constant calls for reform of the laws themselves and of

the methods of enforcing them. For all one can know, if con-
victed in a retrial DeBartolo may not be deported when he is
released from prison. (He will not be deported if the immi-
gration authorities decide not to place him in removal pro-
ceedings.) His subjecting himself to a trial rather than re-
maining in Italy and trying to acclimate himself to an alien
culture far from his large family is a risky venture but not an
irrational or even a reckless one. (Nor would it have been in
2011.) The probability that he will come out ahead by taking
that course may be small, but it is not trivial. He is entitled to
roll the dice.

We are mindful that the parties and the district court are
not required to consider the circumstances that DeBartolo
would face if he went to trial today. The issue required by
the *Padilla* line of cases to be considered is what he would
have done, at the time he had to decide whether to plead
guilty, had he known of the grave risk of being deported if
he were convicted. There was a reasonable probability that
he would not have pleaded guilty, and that is all that mat-
ters to our decision. But it would be sensible for both DeBar-
tolo and the government to consider the current situation in
assessing how to move forward. Conviction is not a forgone
conclusion, and the government should consider whether
having served the prison sentence the government originally
recommended and having then languished in the custody of
the Immigration and Naturalization Service for a year or
more and then deported to a country in which he has never
really lived, DeBartolo has been punished sufficiently and
should now be allowed to go home to his wife and children
without facing a new trial.

The denial of the petition for relief under 28 U.S.C. § 2255 is

REVERSED.