THAPAR, Circuit Judge, dissenting.
Being a criminal defense attorney is not easy. You have to deal with the government, which often has the odds and resources stacked in its favor. You have to advise a client, who may not be willing to listen. Sometimes you may have to delve into law far afield from your day-to-day practice-like immigration law. And if you get that law wrong and a court says you were ineffective, you may face bar sanctions.
Here, a defense attorney with a Cuban client says he sought out assistance of immigration attorneys and advised his client that he probably would not be deported if he pled guilty. Even the Assistant United States Attorney agreed. But things changed, and his client may get deported. Now his client says he wishes he would have negotiated a better deal that took deportation off the table and claims that, but for his counsel's advice, he would have done so. The majority agrees and in the process announces a new right-the right to negotiate more (even though the government does not have to and has said it will not in this case).
Because this "right" is found neither in the Constitution nor the case law, I respectfully dissent.
I.
The facts here are simple: Daynel Rodriguez-Penton, a permanent resident who came to the United States from Cuba, pled guilty to conspiring to distribute oxycodone. He received a sentence of 121-months imprisonment, which was later reduced to 97 months. While both the district court and his defense attorney apparently alluded to deportation, neither specifically told Rodriguez-Penton that he could be deported as a result of his guilty plea. R. 78, Pg. ID 248 (district court observed that "the defendant's here on a green card," but "d[id]n't know if this conviction would result in deportation"); R. 128, Pg. ID 469 (defense counsel claimed he told Rodriguez-Penton that "since ... he had emigrated from Cuba, I did not believe he *491 would be deported"). Rodriguez-Penton claims that he first learned he was deportable when he arrived at prison. So he wanted out of his guilty plea. After an unsuccessful direct appeal in which he charged the district court with failing to inform him of the risk of deportation, United States v. Rodriguez-Penton , 547 F. App'x 738, 740 (6th Cir. 2013), he filed this motion under 28 U.S.C. § 2255, claiming ineffective assistance of counsel under the Sixth Amendment.
An ineffective-assistance claim requires two showings: deficient performance and prejudice. Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The district court assumed that Rodriguez-Penton's counsel's performance was deficient and proceeded to the prejudice inquiry.[1] But since Rodriguez-Penton claimed that, even with better advice, he would not have forgone a plea and thus would not have proceeded to trial, the district court concluded that he could not show prejudice. Rodriguez-Penton appeals that finding. He argues that, but for his counsel's immigration advice, he would have sought to negotiate a better plea offer that promised no deportation.
II.
In recent years, the Supreme Court has decided several important cases defining the Sixth Amendment rights of criminal defendants who plead guilty. Under those decisions, a criminal defendant has a right to effective assistance in deciding whether to accept a plea offer. Lafler v. Cooper , 566 U.S. 156, 168, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) ; Missouri v. Frye , 566 U.S. 134, 147, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). If he declines the offer because of his lawyer's bad advice and ends up worse off after trial, he can show prejudice and the court can order the prosecutor to reoffer the plea. Lafler , 566 U.S. at 168, 171, 132 S.Ct. 1376. The Court's decision in Lee v. United States , --- U.S. ----, 137 S.Ct. 1958, 198 L.Ed.2d 476 (2017), stands for the flip side of the coin: if a defendant pleads guilty based on his lawyer's bad *492 advice but would have gone to trial otherwise, then the defendant can show prejudice from the lost opportunity to go to trial. Id. at 1966-67.
Notwithstanding these decisions, the Supreme Court has never held that a criminal defendant has a right to try to bargain for a plea offer he never received. So what do we do when, as here, a defendant says he would have rolled the dice not at trial, but at more plea negotiating ? Is a defendant who loses out on the opportunity at more negotiating therefore prejudiced because of it? Rodriguez-Penton thinks so. But neither the Constitution nor Supreme Court precedent supports his position.
III.
Central to this case is what to make of the Court's decision in Lee . Lee concerned a defendant who, but for bad advice about deportation consequences, would have declined a plea bargain and instead gone to trial-rather than seeking a better plea deal. Id. at 1966-67. In vindicating the defendant's lost opportunity to go to trial, Lee expressly left open the question that we must answer. Id. at 1966 n.2 (declining to reach the argument that Lee was prejudiced "because, had his attorney advised him that he would be deported if he accepted the Government's plea offer, he would have bargained for a plea deal that did not result in certain deportation"). Still, Lee 's tea leaves are the best guidance we have to go on.
One way to read Lee is the gambler's reading, which is to say that prejudice focuses solely on a defendant's lost opportunity to gamble. So long as a defendant who has pled guilty under bad advice says that good advice would have persuaded him to roll the dice-whether at trial or in attempting more plea negotiation-then that is prejudice. Certain portions of Lee , read in isolation, might support that reading. Id. at 1966-67 (characterizing the prejudice inquiry as "asking what an individual defendant would have done," in which case "the possibility of even a highly improbable result may be pertinent to the extent it would have affected his decisionmaking").[2]
A more complete reading of Lee , however, eschews the sort of "categorical rule[ ]" that would treat trials and plea negotiations the same and accounts for the Court's repeated emphasis on a defendant's right to a trial. Id. at 1965-67, 1966 n.2. Where a defendant says that proper advice would have influenced him to go to trial, courts can say that improper advice denied him of a "proceeding" that the Sixth Amendment guarantees. Id. But the same is not true when a defendant says that improper advice denied him the chance at negotiating a better plea. A plea negotiation is not a "proceeding," and a defendant has no right to it. Id. ; see Weatherford v. Bursey , 429 U.S. 545, 561, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977)
*493 ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."); accord Frye , 566 U.S. at 148, 132 S.Ct. 1399 ("[A] defendant has no right to be offered a plea ...."). A reading of Lee that simply substitutes "plea negotiation" for "trial" in order to require a new chance to bargain ignores that trials are a matter of right, but plea negotiations are not.
In addition, even under the gambler's reading of Lee , a defendant still must show a "reasonable probability" that, but for counsel's bad advice, he would have received a chance to negotiate a better offer-something much more difficult in the plea-bargaining context. Lee , 137 S.Ct. at 1969 (quoting Hill v. Lockhart , 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ). Unless the judiciary can force the executive to negotiate-which, for reasons discussed below, it cannot-then a chance to negotiate is just that: a chance. It is just as (or more) likely that a defendant dead-set on avoiding trial would be forced to settle for the exact same offer he is trying to get out of or worse. It may never be reasonably probable (even if possible) that the government will sit down at the negotiating table, unless the government concedes as much. And according to Rodriguez-Penton, the government here told him in no uncertain terms that there would be no new negotiations. Appellant Suppl. Br. 11; see also Appellee Suppl. Br. 5 (stating that a plea without deportation is "not available to Rodriguez-Penton because he dealt in a large amount of oxycodone, so no non-deportable crime fits the facts of this case"). So if all a defendant can show is that he lost out on a possible chance to negotiate, that so-called prejudice cannot upset the "strong societal interest in finality" that applies with "special force" to guilty pleas. Lee , 137 S.Ct. at 1967 (quoting United States v. Timmreck , 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979) ).
The best reading of Lee , therefore, counsels against granting Rodriguez-Penton relief. Weatherford , 429 U.S. at 561, 97 S.Ct. 837 ; see Frye , 566 U.S. at 148, 132 S.Ct. 1399 ; see also Lee , 137 S.Ct. at 1970 n.* (Thomas, J., dissenting) ("It is not enough for a defendant to show that he would have obtained a better plea agreement. A defendant has no right to be offered a plea, and this Court has never concluded that a defendant could show a 'reasonable probability' of a different result based on a purely hypothetical plea offer subject to absolute executive discretion." (internal citations, quotations marks, and alteration omitted) ).
Understanding that Lee did not create a new right to plea bargaining, the majority claims that it is simply following Lafler and Frye . Majority Op. 489-90. But neither of those cases suggest a criminal defendant can prove prejudice from missing out on hypothetical plea offers. Indeed, the key in both Lafler and Frye was that there was a previous (more favorable) plea offer that the defendant rejected based on bad advice. Lafler, 566 U.S. at 161, 166, 132 S.Ct. 1376 ; Frye, 566 U.S. at 148, 132 S.Ct. 1399. In Lafler, the Court stated that "[i]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." 566 U.S. at 168, 132 S.Ct. 1376. And, in Frye , the Court held that to demonstrate prejudice, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." 566 U.S. at 147, 132 S.Ct. 1399 (emphasis added). Here, Rodriguez-Penton has no plea offer to which he can point; he simply was not offered a plea deal with a guarantee that he would not be deported.
*494 Thus, the majority's reliance on Lafler and Frye is misplaced.
IV.
Even if Rodriguez-Penton could show prejudice, the question of remedy would present a separate hurdle. All the possible remedies here share a common characteristic: they push the judiciary well outside of its proper role in criminal proceedings. Ordering a prosecutor to reoffer a plea that was already offered is problematic enough. Lafler , 566 U.S. at 183-84, 132 S.Ct. 1376 (Scalia, J., dissenting); id. at 187-88, 132 S.Ct. 1376 (Alito, J., dissenting); Williams v. Jones , 571 F.3d 1086, 1109-10 (10th Cir. 2009) (Gorsuch, J., dissenting) (explaining that this remedy "use[s] the rubric of ineffective assistance to upend the plea bargaining process, transforming it from its historic role as an act of executive discretion to one of judicially enforceable right"). Yet ordering the prosecutor to extend a plea offer that was never made is something well beyond the judiciary's powers. See Young v. U.S. ex rel. Vuitton et Fils S.A. , 481 U.S. 787, 807, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (observing that it is within a prosecutor's discretion to decide "whether to enter into plea bargains and the terms on which they will be established," and that such decisions "are all made outside the supervision of the court"). Rodriguez-Penton, to his credit, does not ask us to go that far. Instead, he proposes that we vacate his conviction and simply recommend that the prosecutor not recharge him.
But Rodriguez-Penton's proposed remedy fails to solve the problem it tries to address and creates a new problem along the way. First, the judicial branch has no business taking any position on the exercise of prosecutorial discretion, whether "recommended" or not. Bordenkircher v. Hayes , 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("[T]he decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion."); see Fed. R. Crim. P. 11(c)(1) ("An attorney for the government and the defendant's attorney ... may discuss and reach a plea agreement. The court must not participate in these discussions." (emphasis added) ); United States v. Ushery , 785 F.3d 210, 219-21 (6th Cir. 2015). And recommending that the prosecutor take an action presents a new problem: the judiciary cannot render advisory rulings. Steel Co. v. Citizens for a Better Env't , 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). The Constitution tells us that our job as judges is to resolve "Cases" and "Controversies" through enforceable remedies-not to write strongly-worded advice columns. U.S. Const. art. III; see Simon v. E. Ky. Welfare Rights Org. , 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (observing that our jurisdiction extends only to matters where it is "likely" that an injury will be redressed by a favorable decision). Thus, we have no power to provide the remedy Rodriguez-Penton seeks.
Rodriguez-Penton's proposed remedy also presents a practical problem. If the court vacates his conviction, the prosecutor may well reject the court's recommendation of clemency and adhere to Department of Justice policy that requires charging Rodriguez-Penton with "the most serious, readily provable offense"-likely that to which he already pled guilty in this case. Memorandum from the Office of the Att'y Gen. on Dep't Charging and Sentencing Policy 1 (May 10, 2017). The government could then insist on going to trial, and Rodriguez-Penton, who has already admitted his guilt, would likely lose. Even with credit for time served, Rodriguez-Penton could be sentenced to more time than under his initial plea and still *495 face the possibility of deportation. Counsel asserts that Rodriguez-Penton has been made adequately aware of the possible risks here, but there is no reason to expand the Sixth Amendment by judicial fiat and push courts out of their constitutional role, only to watch Rodriguez-Penton lose a game with long odds.
Nor is the solution to remand to the district court with the hope that more evidence and more briefs will reveal a non-existent answer. See Majority Op. 489-90. Since courts have no power to provide the remedy Rodriguez-Penton seeks, remanding to the district court with instructions to sift through unavailable remedies is improper (not to mention unfair to the district court). Williams , 571 F.3d at 1108-09. Here, there is neither prejudice nor remedy. Today's decision leaves to the district court the unenviable task of inventing both.[3]
* * *
The impact of today's decision could be wide-reaching. Rodriguez-Penton claims that he should have received better advice about deportation. But the decision today speaks more broadly than immigration consequences, potentially encompassing any deficient advice that "infected [a defendant's] decisionmaking process, and thus undermines confidence in the outcome of the plea process." Majority Op. 488. After today, any time an attorney fails to inform a defendant about any direct consequence of a plea agreement, a defendant may have a right to negotiate again. And so we should expect to see all manner of § 2255 motions by defendants claiming they got bad advice about their appellate waiver, or drug quantity, or applicable sentencing enhancements, or recommended sentencing range, to name a few. All will be admittedly guilty, but all will want their chance at a better deal. And every one of them will have been "prejudiced."
It is one thing to recognize that plea bargaining is a "critical phase" of modern criminal prosecutions. Padilla , 559 U.S. at 373, 130 S.Ct. 1473. It is wholly another to transform plea bargaining into an absolute entitlement-defendant's satisfaction guaranteed. Since this entitlement is found neither in the Constitution nor the case law, I respectfully dissent.

The district court did not make any factual findings as to deficiency. See Padilla v. Kentucky , 559 U.S. 356, 359, 368-69, 374, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (holding that counsel rendered constitutionally deficient performance where he told his client that he "did not have to worry about immigration status since he had been in the country so long," even though the law was clear that he would be eligible to be deported). Since the district court will consider the case again on remand, I would leave the deficiency inquiry to the district court in the first instance, rather than find deficiency on our own. See, e.g. , United States v. Williams , 527 F. App'x 457, 460 (6th Cir. 2013) (declining to consider ineffective-assistance claim where "a variety of questions remain[ed] unresolved" and concluding that "[t]he judge who heard the testimony and reviewed the evidence is better suited to decide these issues"); Bigelow v. Williams , 367 F.3d 562, 576 (6th Cir. 2004). As the Supreme Court said in Padilla , "[i]mmigration law can be complex, and it is a legal specialty of its own." 559 U.S. at 369, 130 S.Ct. 1473. When the law is not "succinct and straightforward," a criminal defense attorney must only advise his client that there may be a risk of "adverse immigration consequences." Id. And here, it appears that Rodriguez-Penton's counsel, the Assistant United States Attorney, and some "immigration attorneys" all believed that Rodriguez-Penton would not be deported. R. 128, Pg. ID 484, 506. At the time, that conclusion may have been reasonable. After all, defense attorneys are not expected to be psychic. And the United States did not normalize relations with Cuba until 2014, which likely changed both whether the United States was willing to deport Cuban nationals and whether Cuba was willing to accept them. These are all things that a district court would ordinarily determine before calling a defense attorney deficient. In light of these difficult issues, it is best left to the district court to decide whether counsel's advice rose to the level of being "unprofessional." Padilla , 559 U.S. at 366-67, 130 S.Ct. 1473.

Several circuits have indicated that a defendant in Rodriguez-Penton's situation can show prejudice based on the possibility of negotiating a better plea offer. United States v. Swaby , 855 F.3d 233, 241-43 (4th Cir. 2017) ; United States v. Rodriguez-Vega , 797 F.3d 781, 788-89 (9th Cir. 2015) ; DeBartolo v. United States , 790 F.3d 775, 779 (7th Cir. 2015) ; Kovacs v. United States , 744 F.3d 44, 52-53 (2d Cir. 2014). These decisions predate Lee and thus lack the benefit of its insights. In addition, unlike Rodriguez-Penton, the defendants in those cases pointed to facts demonstrating that a plea offer removing the possibility of deportation was on the table (or could have been). See, e.g. , Swaby , 855 F.3d at 242-43 ; Rodriguez-Vega , 797 F.3d at 789 ; DeBartolo , 790 F.3d at 779-80 ; Kovacs , 744 F.3d at 53. Moreover, to the extent these cases conclude that a lost opportunity to negotiate a plea is prejudice under Strickland , none provides a constitutionally satisfactory answer why.

I recognize that the district court, which did not have the benefit of Lee , relied solely on Hill v. Lockhart in reaching its decision. But the district court's reliance on Hill is no reason to reverse and remand in this case. Hill remains good law and provides the correct answer here, where the only prejudice Rodriguez-Penton can show is a lost opportunity to go to trial, which he has made clear he does not want. 474 U.S. at 59, 106 S.Ct. 366 ; see Lee , 137 S.Ct. at 1965-66, 1969 (applying Hill ). And again, in addition to the absence of prejudice, there is no constitutionally available remedy the district court can provide.