In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1358

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES WILLIAMS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-00446-1 — **Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 12, 2019 — DECIDED JANUARY 10, 2020

Before BAUER, EASTERBROOK, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* The Supreme Court's recent decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), upset what was once a seemingly settled question of federal law. The Courts of Appeals had unanimously concluded that 18 U.S.C. § 922(g), which prohibits several classes of people from possessing a firearm or ammunition, required the government to prove a defendant knowingly possessed a firearm or ammunition, but not that he knew he belonged to one of the

prohibited classes. *See, e.g.*, *United States v. Lane*, 267 F.3d 715, 720 (7th Cir. 2001). The Supreme Court in *Rehaif* corrected this misinterpretation and held that under 18 U.S.C. §§ 922(g), 924(a)(2), the government must show "that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194. Charles Williams had already pleaded guilty to possessing a firearm after a felony conviction when the Court issued *Rehaif*, and his plea reflected the law as it was in this Circuit before that decision. He seeks now, for the first time on direct appeal, to withdraw his plea. We conclude that he bears the burden of showing that his erroneous understanding of the elements of § 922(g) affected his substantial rights—his decision to plead guilty—before he may do so. He has failed to carry that burden, so we affirm the judgment.

**I.**

In 1998, an Illinois state court convicted Williams, then a teenager, of first-degree murder and sentenced him to thirty years' imprisonment. Williams was paroled in 2008, but had his parole revoked for the last few months of 2011 based on a domestic battery charge. He pleaded guilty to this offense and served 180 days in jail. Because of his murder conviction, the court could have sentenced him to up to three years' imprisonment. *See* 720 ILCS 5/12-3.2(b); 730 ILCS 5/5-4.5-45.

Williams had no other criminal history until 2017, when he traded cocaine to his employer for a firearm. His employer cooperated with the government and conducted a controlled buy to purchase the gun back from Williams. For this transaction, a grand jury indicted Williams on one count of possession of a firearm as a felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Williams pleaded guilty without a plea agreement, and the district court conducted a thorough colloquy to determine whether this plea was knowing and voluntary. The court confirmed Williams's admission that he possessed a firearm; that prior to his possessing that firearm, it had traveled in interstate commerce; and that he had been convicted of a crime punishable by a term of imprisonment exceeding one year. Nothing at the plea colloquy revealed definitively whether Williams had known, at the time he possessed the gun, that he had been so convicted. The district court later sentenced him to 96 months' imprisonment, a year below the bottom of his Guidelines range.

Four months later, the Supreme Court decided *Rehaif* and held that an element of a conviction under 18 U.S.C. §§ 922(g), 924(a)(2), is the defendant's knowledge of his status (at least for felons and aliens illegally in the United States). 139 S. Ct. at 2200. For Williams, that means the government would have needed to prove—or he to admit—that he knew he had "been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1).

## II.

Williams asks this court to vacate his conviction and allow him to withdraw his guilty plea. Given the timing of *Rehaif*, Williams never moved to withdraw his plea in the district court, so we review his request to do so now only for plain error. Fed. R. Crim. P. 52(b); *United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Zacahua*, 940 F.3d 342, 344 (7th Cir. 2019). Plain error has four elements: (1) there was an error, (2) the error is clear and obvious, (3) the error affected the defendant's substantial rights, and (4) the error seriously affects the fairness, integrity, or public reputation of judicial

proceedings. *Zacahua*, 940 F.3d at 344. The parties agree that, under *Rehaif*, the district court's failure to inquire into Williams's knowledge of his status or to confirm a factual basis for that element of the offense was an obvious error. *See Henderson v. United States*, 568 U.S. 266, 269 (2013) (holding that plain error is determined based on law at time of review). They dispute whether the error affected Williams's substantial rights and the integrity of judicial proceedings.

The defendant ordinarily bears the burden of persuasion on the question whether an error affected substantial rights. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1348 (2016); *United States v. Olano*, 507 U.S. 725, 734 (1993). This is true even for errors going to the validity of a guilty plea. *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004); *Vonn*, 535 U.S. at 59. To meet this burden, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error, he would not have entered the plea." *Dominguez*, 542 U.S. at 83.

Williams argues that he should not be subject to the standard in *Dominguez*. He proposes that we adopt a new test that he calls "the supervening-decision doctrine," under which the government would bear the burden of proving that an error did not affect the defendant's rights (i.e., that it was harmless) if a supervening decision reverses settled precedent and alters the elements of an offense to which he pleaded guilty.

Williams identifies *United States v. Washington*, 12 F.3d 1128 (D.C. Cir. 1994), as the basis for this rule. The D.C. Circuit there applied something called the "supervening-decision doctrine," but it bears little resemblance to Williams's proposal. In *Washington*, the D.C. Circuit found the district court's

error affected Washington's substantial rights but nevertheless affirmed because the error "was not 'plain' or 'obvious' under current law at the time of trial." *Id.* at 1138. The supervening-decision doctrine provided an escape hatch for this latter conclusion: the court would correct errors that were plain only at the time of appeal, but only if an objection would have been frivolous (and Washington's would not have been). *Id.* at 1138–39. The Supreme Court has since obsoleted this escape hatch—courts now must always analyze whether an error is plain based on the law at the time of review. *Henderson*, 568 U.S. at 269. The supervening-decision doctrine, thus, serves no purpose here. *Cf. United States v. David*, 83 F.3d 638, 646 & n.11 (4th Cir. 1996) (adopting plain-at-time-of-review rule for the same reasons the D.C. Circuit created its doctrine).

The Second Circuit, however, has adopted Williams's proposal, although under the name of the "modified plain error rule" instead. Under that doctrine, the overturning of settled precedent shifts the burden to the government to prove that any error was not prejudicial. *See United States v. Viola*, 35 F.3d 37, 42 (2d Cir. 1994). The Second Circuit has reserved the question whether this modified rule is consistent with the Supreme Court's decision in *Johnson v. United States*, 520 U.S. 461 (1997). *See, e.g.*, *United States v. Botti*, 711 F.3d 299, 309 (2d Cir. 2013). It did so most recently in *United States v. Balde*, 943 F.3d 73, 96 n.6 (2d Cir. 2019), another case involving a *Rehaif* error.

The Second Circuit did not need to decide who carried the burden of persuasion because Souleymane Balde had shown an effect on substantial rights even if he had the burden. Balde had entered a guilty plea conditioned on his right to appeal the district court's determination that he was "an alien … illegally or unlawfully in the United States" under 18 U.S.C.

§ 922(g)(5)(A). 943 F.3d at 79. Balde's immigration status was complicated. The government had granted him advanced parole to leave the country while his request for adjustment of status was pending, but it revoked that parole and denied adjustment while he was overseas. Shortly after he returned, the government ordered him removed, but it could not effect his deportation after his foreign passport expired. *Id.* at 78–79. Because Balde's status was "hotly contested" (he had argued, unsuccessfully, that he was either legally present or not "in" the United States) there was a "significant possibility" that he might not be guilty at all. *Id.* at 97. This possibility more than carried his burden of demonstrating an effect on his substantial rights and the integrity of judicial proceedings. *Id.* at 98.

We cannot so easily avoid the issue of burden placement, because the record here is nearly silent on Williams's knowledge of his uncontested felon status. Williams argues that this silence should favor him because the *Dominguez* Court emphasized that "the violation claimed was of Rule 11, not of due process." 542 U.S. at 83. He contends (and the government does not dispute) that a misunderstanding of the elements of an offense, shared by the defendant, the lawyers, and the judge, is evidence of an unknowing and involuntary plea that is not just a violation of Rule 11, but also of due process. *See, e.g., Bousley v. United States*, 523 U.S. 614, 618–19 (1998); *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008). This difference, he argues, mandates a modified rule.

Reframing the error as a due process violation provides no reason to shift the burden of persuasion onto the government. *Dominguez* emphasized the difference between Rule 11 and due process not in discussing the placement of the burden, but in the difficulty of meeting that burden. *Dominguez*, 542

U.S. 74, 82–83 ("[T]he burden of establishing entitlement to relief for plain error is on the defendant claiming it, and for several reasons, we think that burden should not be too easy for defendants …."). These are different questions. *See Molina-Martinez*, 136 S. Ct. at 1348 (drawing this distinction). As the Second Circuit has hinted, shifting the burden to the government is inconsistent with the Supreme Court's statement in *Johnson* that the judiciary has "no authority" to make exceptions to Rule 52(b). 520 U.S. at 461. Rule 52(b) states "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." The text of the Rule mandates that the defendant prove the error *did* affect substantial rights; it is not the government's burden to prove that it did not. *See Olano*, 507 U.S. at 734–35 (explaining textual origins of this burden). The Rule applies just as well to constitutional errors as to any other. The Supreme Court held as much in *United States v. Marcus*, 560 U.S. 258 (2010), which abrogated a different Second Circuit rule altering the plain-error burden. *See id.* at 263. The Second Circuit's rule there was based on what it perceived as a violation of the Ex Post Facto Clause, but the Court clarified that it was, if anything, a violation of the Due Process Clause. *Id.* at 264. "[H]owever Marcus' claim is labeled," though, there was no reason not to require "a showing of individual prejudice." *Id.* at 264–65.

We therefore agree with the First Circuit that the burden of persuasion rests on the defendant seeking to withdraw his plea based on a *Rehaif* error. *United States v. Burghardt*, 939 F.3d 397, 405 (1st Cir. 2019); *see also United States v. Green*, __ F.3d __, No. 18-3589, 2019 WL 7198504, at *7 n.4 (8th Cir. Dec. 27, 2019). To meet this burden, a defendant must show a reasonable probability that he would not have pleaded guilty if he knew of *Rehaif*. In reviewing the record, we "can fairly ask

… what he might ever have thought he could gain by going to trial," though we will not "second-guess a defendant's actual decision," if the record shows it is reasonably probable that he would have taken a chance at trial, even foolishly. *Dominguez*, 542 U.S. at 85.

This burden is not, as Williams contends, insurmountable in all cases. Some defendants' likelihood of acquittal—and by extension their willingness to plead guilty—shifted substantially after *Rehaif*. *Cf. United States v. Davies*, 942 F.3d 871, 874 (8th Cir. 2019) (vacating jury conviction for defendant who possessed firearm after felony conviction but before sentencing). The Supreme Court even gave a possible example: "a person who was convicted of a prior crime but sentenced only to probation." *Rehaif*, 139 S. Ct. at 2198 (citing *United States v. Games-Perez*, 667 F.3d 1136, 1138 (10th Cir. 2012)). The government might have some trouble proving beyond a reasonable doubt that this probationer knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year. A reviewing court could therefore infer that it is reasonably probable he would not have pleaded guilty (or pleaded quite as easily) after *Rehaif*—especially given that the reasonable probability standard is not the equivalent of "a requirement that a defendant prove by a preponderance of the evidence that but for error things would have been different." *Dominguez*, 542 U.S. at 83 n.9.

We need not decide a hypothetical like this, though, because Williams's case could hardly be further from it. Putting to one side his felony domestic battery conviction, Williams served a term of imprisonment longer than a year—than a decade even—for murder before he possessed the firearm. In that respect, this case is far easier than *Burghardt*, where the

record did not reveal definitively if the defendant had ever spent more than a year in prison on any one of his convictions. 939 F.3d at 404 & n.4. Unlike the hypothetical probationer or the defendant in *Davies*, someone in Williams's position cannot plausibly argue that he did not know his conviction had a maximum punishment exceeding a year. A jury might well believe a defendant was ignorant of sentencing law to which he was never subjected. Williams, though, would have to convince a jury that he either had no knowledge of where he spent twelve years of his life, or that he honestly believed Illinois had imprisoned him eleven years more than the maximum punishment for first-degree murder—a crime that even the most legally ignorant would know is subject to substantial penalties well beyond a year of imprisonment. Indeed, the ordinary defendant would want to avoid letting the jury know he is a convicted murderer at nearly any cost. By putting his knowledge at issue, though, Williams would be allowing the government to introduce evidence about the nature of his conviction that would otherwise be too prejudicial. *See Old Chief v. United States*, 519 U.S. 172, 190 (1997). The chance of a *Rehaif*-based argument succeeding on this record is nil. *Cf. United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019) (finding no effect on substantial rights in appeal of jury conviction because defendant admitted he served eighteen years in prison); *United States v. Hollingshed*, 940 F.3d 410, 415–6 (8th Cir. 2019) (same for defendant who served four years); *United States v. Benamor*, 937 F.3d 1182, 1189 (9th Cir. 2019) (same for defendant who served five years for felon-in-possession conviction).

This lack of a plausible ignorance defense means that any § 922(g) defendant who served more than a year in prison on a single count of conviction will face an uphill battle to show

that a *Rehaif* error in a guilty plea affected his substantial rights—at least on a silent record. Williams faces an even steeper climb because his record is not truly silent, and the little evidence available further supports the conclusion that he would have decided to plead guilty even if he had been informed of the government's burden of proof. *See Vonn*, 535 U.S. at 74 (permitting court to review entire record on plain-error review). In his sentencing memorandum, Williams explained how his status as a felon made it difficult for him to obtain work with anyone other than his employer-turned-informant—essentially conceding he knew of his status when he possessed the gun. His sentencing memorandum also emphasized his confession, cooperation with the government, and acceptance of responsibility—themes that Williams himself repeated in his allocution, and that the district court highlighted in imposing its below-Guidelines sentence. These facts lead us to doubt Williams's assertion that he would risk a longer sentence for a miniscule chance of acquittal at trial. Again, this case is easier than *Burghardt*, where the defendant received the minimum sentence and may not have benefited from acceptance of responsibility at all. *See* 939 F.3d at 405 & n.5.

Williams insists that it is his right to take a chance at trial, even if he is all but guaranteed to be convicted and sentenced to a longer term of imprisonment. He is, of course, correct. It was his choice whether to go to trial, even if doing so would have been foolish, *Dominguez*, 542 U.S. at 85, but he did not make that choice when it was first offered to him. Because he has not explained how *Rehaif* has made going to trial a less foolish choice, his only other option is to explain why *Rehaif* has made him choose more foolishly. He has not done so. Williams has not even asserted in his briefs that he would not

have pleaded guilty if he had known about *Rehaif*. He says that he wishes to withdraw his plea but does not explain why *Rehaif* caused that desire (only why it should make it easier for him to succeed). Williams points to nothing, and we see nothing, in the record from which we can infer that he would have been more likely to throw a "Hail Mary," *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017), or "roll the dice," *DeBartolo v. United States*, 790 F.3d 775, 778–80 (7th Cir. 2015), after *Rehaif* than before it. Therefore, Williams has not shown the *Rehaif* error affected his substantial rights or the fairness, integrity, or public reputation of judicial proceedings, as required for this court to correct a plain error.

Williams's solution to this unfavorable record is to ask for a limited remand to provide additional evidence. We adopted a limited remand procedure in *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), because it was impossible to determine whether a district court would have sentenced a defendant differently in light of *United States v. Booker*, 543 U.S. 220 (2005), as "sentencing is not either-or; it is the choice of a point within a range." 401 F.3d at 482. The withdrawal of plea, however, is an "either-or" determination that can be—and has been—resolved on the existing record. We leave for another day whether limited remand or vacatur is the appropriate remedy for a closer case.

AFFIRMED